# WASHINGTON COUNTY.

### STATE vs. THE DISTRICT OF NARRAGANSETT.

The Constitution of Rhode Island, art. 4, § 17, provides: "When any bill shall be presented to either house of the General Assembly to create a corporation for any other than for religious, literary, or charitable purposes, or for a military or fire company, it shall be continued until another election of members of the General Assembly shall have taken place, and such public notice of the pendency thereof shall be given as may be required by law."

*Held*, that substantial compliance with this provision was essential to the creation of a corporation to which the provision applies.

*Query*, whether the provision applies to public corporations.

*Held*, that reasonable doubts were to be resolved in favor of the validity of legislative enactments.

*Held*, further, that the provision was to be construed with regard to legislative practice under it.

*Held*, further, that, so construed, the provision did not apply to public corporations.

Hence the court cannot pronounce unconstitutional Pub. Laws R. I. cap. 710, of March 22, 1888, incorporating the District of Narragansett, in the town of South Kingstown, presented and passed without continuance until after an election.

*Held*, further, that cap. 710 was not unconstitutional because no representation in the General Assembly was given to the district, the district being represented in the General Assembly as a part of South Kingstown.

INFORMATION in the nature of *quo warranto*. On demurrer to the information.

Pub. Laws R. I. cap. 710, of March 22, 1888, incorporating the District of Narragansett, in the town of South Kingstown, is as follows:

"SECTION 1. All that portion of the town of South Kingstown and being within the following boundaries: that is to say, commencing in Narragansett Bay at the easterly point of the boundary line between the towns of North Kingstown and South Kingstown, thence running westerly on said boundary line to the centre of Pettaquamscutt River, thence southerly and southwesterly by the centre of said river and of Pettaquamscutt Cove to a brook which empties in said cove, and which brook is the dividing line between the property of Edward W. Davis and the Narragansett Improvement Co.'s land, thence westerly following the

northerly line of said Edward W. Davis's land to the highway, thence westerly across said highway to the line dividing the property of the heirs of Jeremiah P. Robinson from the property of Samuel A. Strong, and following said line to the Silver Lake or Kits Pond, thence following in a westerly direction the southerly shore of said Silver Lake to a line which divides the lands of the James B. Kenyon farm from the land of the heirs of Christopher C. Robinson, thence following in a westerly direction the northerly line of said James B. Kenyon land to the Point Judith Pond, and continuing thence to the centre of said pond, thence southerly through said pond a straight line to a point midway between the Narrows, so called, thence westerly midway through said Narrows to a point midway between Betty Hull Point and Cummock Island, thence southerly through said pond a straight line to a point midway between Gardner's Island and Beach Island, thence southerly a straight line through said pond to a point midway between Gooseberry Island and Little Comfort Island, thence a straight line to the centre of the breachway to the Atlantic Ocean, and thence following said ocean and Narragansett Bay easterly and then northerly to the point of beginning : is hereby incorporated into a District by the name of Narragansett; and the inhabitants thereof shall have and enjoy the like benefits, liberties, privileges, and immunities, and be subject to like duties and responsibilities, as the several towns in this State generally enjoy and are subject to, except as is hereinafter provided.

" SECT. 2.    The judge of the second judicial district is hereby empowered and directed to issue his warrant to any officer or other person, whom he may appoint to warn the qualified voters within the district herein set off as a district from the town of South Kingstown, to meet, for the purposes required by law and the provisions of this act, on the first Monday in April next and on the first Monday in June next.

" SECT. 3.    The said District of Narragansett may elect any and all officers that may be elected by any town or town council, and each and all such officers shall have and exercise like powers and duties as like officers in towns may have and exercise.

" SECT. 4.    There shall be elected a district clerk, council, treasurer, and justices of the peace for said district, and the annual

election thereof shall be held on the first Monday in June.   The annual district meeting for the purpose of ordering a district tax, school and highway tax, and the transaction of such other business as may legally come before said meeting, shall be held on the second Monday in June.

"SECT. 5.   The district council of said District of Narragansett shall, at their first meeting next after their annual election, choose and elect so many district officers as by the laws are or shall be required by any town, or as may or shall be required by any town council to choose and elect, except such as by this act are directed to be otherwise elected.

"SECT. 6.   The district council of said District of Narragansett, elected as herein provided, shall, at some meeting previous to the annual election, determine the number of justices of the peace to be elected by the people, and such justices of the peace, when commissioned and qualified, shall have the same powers and jurisdiction in the district hereby created as if such district were a town in Washington County.

"Whenever any vacancy occurs in any of the offices of or in said District of Narragansett, the district council shall fill the same, and the officer so elected shall hold the office to which he has been so elected until the next annual election, and until another is elected and qualified to act in his stead.

"SECT. 7.   The town council of the town of South Kingstown shall make out a correct alphabetical list of all persons resident in said District of Narragansett entitled to vote in said District under article second, section first, of the Constitution of this State; and a list of all persons entitled to vote by registry and the payment of registry and other taxes, or by the performance of military duty; and shall cause the said list to be certified and delivered to William C. Clark or William G. Caswell or Edwin A. Knowles, of said town of South Kingstown, to be by them or any one of them delivered to the moderator who shall preside at the meeting of the electors of the said District of Narragansett: said council shall also cause a corrected list of all persons entitled to vote as aforesaid to be certified and delivered to the said William C. Clark, William G. Caswell, or Edwin A. Knowles, to be by them or any one of them delivered to the moderator who shall preside

at the meeting of said electors on the first Monday in June next, which said lists shall be the voting lists for said meetings.

" SECT. 8.   There shall be drawn in the District of Narragansett for the Supreme Court when held in Washington County, and for the Court of Common Pleas in said county, one grand and two petit jurors.

" SECT. 9.   The District of Narragansett shall be liable for the support of all persons who now do or who shall hereafter stand in need of relief as paupers, whose settlement was gained by or derived from a settlement within the limits of the said district of Narragansett as described by this act.

" SECT. 10.   The indebtedness of the town of South Kingstown as at present defined shall be apportioned between the District of Narragansett, as herein defined, and the territory of the town of South Kingstown as shall be left after taking therefrom the territory constituted into this district, in proportion to the ratable property in said district and in said town after taking said territory in said district therefrom, according to the last assessment in and by said town of South Kingstown.   All town property now owned by said town of South Kingstown within said town, after taking therefrom the territory comprising said district, shall remain the property of said town, and all town property in the territory comprising this district shall be and become the property of said District of Narragansett: the value of such property in said district and in said town shall be ascertained, and such value shall be allowed and set off to said town and said District in the same proportion as the town debt is divided under the provisions of this act, and the balance that shall remain, after the deduction of its interest in the town property from the amount of its proportion of the indebtedness of the town, shall be paid over by the said District of Narragansett to the town of South Kingstown, and upon the payment thereof the said district shall be discharged of and from all liability for the town debt; and in case said district and town as aforesaid shall not agree in respect to the division, appointment, and payment of said indebtedness or of the town property as aforesaid, the Court of Common Pleas for the County of Washington shall, upon petition of either the town or district, appoint three competent and disinterested persons to hear the

parties and make award therein ; and their award, or that of any two of them, accepted by the court aforesaid, shall be final. The said District of Narragansett is hereby authorized and empowered to hire any and all money required to pay the sum agreed upon or awarded as due by it to said town of South Kingstown. .

"SECT. 11. The town of South Kingstown shall assume and remain holden for all debts and other liabilities of said town arising out of any contract made by said town prior to the passage of this act, and for all claims hereafter arising in consequence of anything done or omitted to be done by said town prior to the passage of this act ; and the said district shall pay to said town its proportion of all moneys paid by said town, in consequence of such debt or liability, in the same proportion as the indebtedness of said town shall be divided.

"SECT. 12. Except as provided in section 11 of this act, all rights and remedies of every kind or nature which said town of South Kingstown had or was entitled to, in any wise growing out of or pertaining to that portion of said town hereinbefore set off as the District of Narragansett, shall belong and appertain to said District of Narragansett, in the same manner and to the same extent as the said town of South Kingstown would have been liable therefor or entitled to if this act had not been passed ; and all suits and proceedings in relation thereto shall be brought by and against said District of Narragansett.

"SECT. 13. For all state and national elections, including that of senator and representatives in the General Assembly of this State and representatives in the Congress of the United States, the town of South Kingstown is divided into two election districts, to be known as the first and second districts ; the first district to comprise all that portion of said town that is not by this act set off as the District of Narragansett, the second to comprise that portion of said town as is set off as said District of Narragansett.

"SECT. 14. After the annual election in June next, the district council, the district clerk, and district treasurer shall have and exercise all the powers and discharge all the duties of town councils, town clerks, and town treasurers in registering, listing, and returning lists of voters and proofs of their qualifications to vote, and of canvassing the rights and correcting the lists of voters in the District of Narragansett.

"SECT. 15. In the election held in said district on the first Monday in April next, the electors (and for this purpose seven shall constitute a quorum) shall elect a moderator and clerk, who shall serve for and during said election, and for and during the annual election in June, and should either not be present or decline to serve at the annual election, the electors may elect a person to perform such duties during said election.

"SECT. 16. In all elections for senator and representative in the General Assembly, the moderator and clerk in the said voting districts in said town of South Kingstown, after the examination of the ballots, shall forthwith seal and deliver to the town clerk of said town of South Kingstown all the ballots for such senator and representative, with a certificate of the number of ballots and for what office they have been given.

"SECT. 17. The town council of South Kingstown shall proceed within two days next after the election to count the ballots, in the same manner as is prescribed in section 14 of chapter 10 of the Public Statutes for the counting of ballots by the moderators and clerks of town and ward meetings, and shall forthwith declare the results.

"SECT. 18. If no election shall have been made of senator and representative in the General Assembly, or of either of them, upon the day appointed by law for any election, the said town council shall order a new election to be held not more than ten days from the first election, and so on until the election shall be completed.

"SECT. 19. The moderators and clerks in each of said districts shall, after having counted the ballots as required by section 14 of chapter 10 of the Public Statutes, seal up in open meeting the ballots for general officers, representatives in Congress, and electors of president and vice-president of the United States, and shall certify that the ballots by them sealed up are the ballots given in at such election, the number of votes given for each of the candidates, and that the number of ballots does not exceed the number of electors voting at such election ; and shall deliver or send such ballots, so sealed up and certified, to the secretary of state, except the ballots for electors of president and vice-president, which shall be delivered or sent to the governor.

" SECT. 20.   All the books of record of said town of South Kingstown shall be the property and remain in the custody of said town, but the inhabitants of the District of Narragansett shall have the same right of access to the same as if this act had not been passed; and the town clerk of said town of South Kingstown shall, as soon as may be after the passage of this act, cause so much of said record as relates to land in said District of Narragansett, as have been made since the year 1867, to be transcribed and copied for the use of said District of Narragansett, the expense whereof shall be paid by said District of Narragansett, and said transcripts and copies shall be deposited in the office of the district clerk in said District of Narragansett, and certified copies thereof shall have the same validity as certified copies from the original record.

" SECT. 21.   All proceedings commenced or pending prior to the passage of this act before the court of probate in the town of South Kingstown, arising from or within said portion hereby constituted the District of Narragansett, shall remain within the jurisdiction of said court of probate of the town of South Kingstown, which said court is hereby authorized to proceed upon said matters as if this act had not been passed.

" SECT. 22.   The school commissioner shall apportion the school money in the town of South Kingstown in accordance with the last census taken and published by the State, and according to the school districts, as follows : The school committee of the town of South Kingstown shall cause the census to be taken prior to the first day of June next of all the children under fifteen years of age, and report the number of said children in said District of Narragansett, and in the town of South Kingstown lying without the territory of said district, as also the school districts in each, to the said commissioner, and he shall distribute the school money to said district and to said town in the ratio to the number of children and the number of school districts in said district and in said town, not constituted in the District of Narragansett.

" SECT. 23.   The district council of said District of Narragansett may remove all officers by them appointed for misconduct, inattentiveness to duty, or incapacity, at any regular meeting of said council.

" SECT. 24.   All appropriations made by the town of South Kingstown prior to the passage of this act shall be paid and expended in the same manner and upon and for the same territory as though this act had not been passed.

" SECT. 25.   From and after the passage of this act, the valuation of the town of South Kingstown as it then remains as a basis of state tax, as provided by chapter 27 of the Public Statutes, shall be such proportionate part of the present sum apportioned to said town as the value of taxed property in that portion of said town, as is not comprised within the limits of said District of Narragansett, bears to the tax property within the portion comprised within the boundaries of said district; and the difference between said state valuation for said town of South Kingstown and the present valuation shall be the basis for state taxation of said district; and for the purpose of fixing the same, James H. Pendleton, David S. Baker, Jr., and Samuel Clark are hereby appointed a committee to adjust and fix the same, and the amount so found by them, or any two of them agreeing, shall be the basis of state taxation for said town and said district.   The expenses of said committee, and for their services, the same to be determined by the council of South Kingstown, to be borne equally by said town and district.   The said committee shall report the result of their action to the town of South Kingstown, the District of Narragansett, to the secretary of state, and to the general treasurer as soon as may be.

" SECT. 26.   Except as is herein otherwise provided, the town and other officers of the town of South Kingstown shall continue to exercise their several offices in said portion set off as a district as aforesaid, so far as relates to town business, until the first Monday in June next, and until the officers elected at such election by said District of Narragansett shall be qualified to act; and the town council of said town shall fix the number of justices of the peace to be elected by said District of Narragansett at its next annual election.

" SECT. 27.   Thomas G. Hazard, Jr., and George T. Lanphear are hereby appointed a committee to run the lines and set up stone bounds between the District of Narragansett and that part of the town of South Kingstown from which said district is set off

by this act, and to apportion equitably the expense thereof between the town and the district which said town and district shall be held to pay.

. " SECT. 28. The District of Narragansett shall not in any one year levy and assess a tax upon the taxable property of said district greater than at the rate of seventy five cents upon every one hundred dollars of valuation.

" SECT. 29. The number of the district council shall be not less than three nor more than seven.

" SECT. 30. The district council shall within the said District of Narragansett have and exercise all probate powers and duties, and have as full probate and other jurisdiction as are now⁺by law imposed or conferred upon town councils in this State, to the exclusion of the town council of the town of South Kingstown within said district.

" SECT. 31. All officers elected in said district by the electors of the District of Narragansett, or by the district council thereof, shall be known and designated as district officers.

" SECT. 32. This act shall take effect from and after its passage, and all acts and parts of acts inconsistent herewith are hereby repealed."

*Providence, February* 2, 1889. DURFEE, C. J. The question presented for decision is, whether chapter 710 of the Public Laws, passed March 22, 1888, is constitutional. By the first section of said chapter a portion of the town of South Kingstown, therein described, " is incorporated into a District by the name of Narragansett," and it is enacted that the " inhabitants thereof shall have and enjoy the like benefits, liberties, and immunities, and be subject to the like duties and responsibilities, as the several towns in this State generally enjoy and are subject to, except as is hereinafter provided." It is provided in a subsequent section that " for all state and national elections, including that of senator and representatives in the General Assembly," the district shall be merely a voting district of the town of South Kingstown. The bill for said chapter was introduced into the General Assembly in March, 1888, and was passed March 22, 1888, before the annual election of members for the legislative year ensuing, which did not occur until April. It is contended for the prosecution that

the chapter is void, because it was passed without compliance with the Constitution of the State, article 4, section 17, which is as follows, to wit: "Hereafter when any bill shall be presented to either house of the General Assembly, to create a corporation for any other than for religious, literary, or charitable purposes, or for a military or fire company, it shall be continued until another election of members of the General Assembly shall have taken place, and such public notice of the pendency thereof shall be given as may be required by law."

It is contended for the defence that the chapter is valid, *first*, because said section 17 is merely directory, and, if mandatory, *second*, because the district is not a corporation within the meaning of the word as used in section 17.

Judge Cooley, in his excellent work on Constitutional Limitations, expresses the opinion that every constitutional direction should be regarded as mandatory, since it cannot be supposed that rules of proceeding would be prescribed in a constitution unless they were deemed to be essential. Perhaps this view may be too strict for some cases where a rule of proceeding is merely an incidental or subordinate part of the provision in which it occurs. The rule of proceeding prescribed by section 17 is not a subordinate part, but the whole of it. Doubtless the purpose is to notify the people of the pendency of the bill, and give them an opportunity to express themselves, according as they may like or dislike it, in the election of the new members, and thus exert an influence, more direct than they otherwise could, upon the question of its enactment. In this view it seems to us that a substantial compliance with the section must be regarded as indispensable to the valid enactment of any bill for the creation of any corporation to which the section applies. A proposition to amend the Constitution by striking out section 17 was submitted to the people in 1876 and rejected, a considerable majority of the votes cast being against it.

Is the district a corporation within the meaning of the word as used in section 17? It is indisputably a corporation, and must be held to be within the section unless there is some sufficient reason for holding otherwise. The contention for the district is that the word, though it is technically comprehensive enough to include

public corporations, is popularly used to signify only private corporations, and was so used in section 17.   There can be no doubt that the word is frequently so used, it being assumed that it will be understood that it is so used in the absence of anything to show that a fuller meaning is intended.   The use occurs not only in conversation, speeches, newspapers, and public documents, but even in the statute book.   In Pub. Stat. R. I. cap. 27, § 14, it is enacted that " No corporation other than a corporation for religious, literary, or charitable purposes, or a military or fire company, shall be organized under a charter until the petitioners for the same shall pay into the general treasury, for the use of the State, one hundred dollars."  The language follows that of section 17, but it has not been held to cover public corporations.   Chapter 152 is entitled " Provisions respecting corporations in general," and the provisions, though not in terms limited to private corporations, seem to be intended only for such corporations.   There are decisions which recognize such a use of words.   Street and sewer assessments for benefit are taxes, but they have been held not to be taxes within the meaning of the word as used in leases, charters, and statutes.   *In the Matter of College Street*, 8 R. I. 474 ; *Beals* v. *The Providence Rubber Co.* 11 R. I. 381.   The organic act of Washington Territory authorizes the legislative assembly of the territory to confer the right of suffrage on " citizens of the United States above the age of twenty one years," and the assembly conferred the right on such citizens, both male and female ; but the Supreme Court of the territory has recently decided that the assembly had no power to confer it on women, because women, though technically citizens, are not citizens within the meaning of the word as used in the act.   *Bloomer* v. *Todd*, 19 Pacific Reporter, 135.   See, also, *Opinion of Justices*, 107 Mass. 604 ; *Robinson's Case*, 131 Mass. 376.   " Every constitution," it has been said, " has a history of its own which is likely to be more or less peculiar, and, unless interpreted in the light of this history, is liable to be made to express purposes which were never within the minds of people in agreeing to it."   Per Cooley, C. J., in *People* v. *Harding*, 53 Mich. 481.

The defendants contend further, in support of their views, that the section originated in certain jealousies or fears in regard to

private, not public, corporations.  The fear was that such corpo-rations, being armed with large powers and extraordinary fran-chises, might become, especially if multiplied unduly, dangerous to the common weal.  This fear was aggravated by the decision in the Dartmouth College case.  The fear was specially rife in regard to banks.  The meagre report which we have of the proceedings of the convention to frame the Constitution shows that the section, as first offered, covered only " banking companies for the purpose of issuing notes for circulation."  This was amended so as to in-clude " all banks."  A motion was then made to insert railroad and turnpike corporations.  Some members then expressed a wish to have all corporations included except those for religious, chari-table, military, and fire companies, and thereupon the section was referred, and subsequently reported in its present form and adopted.  There was no mention of public corporations.  Public corporations are not obnoxious to the jealousies and fears referred to.  They are a part of the machinery of government, mere modes of organization, by virtue of which the people of a city, town, or district are enabled the better to perform their public functions, and they may be changed or abolished at the will of the legislature.  " They can be considered," says Chancellor Bland, in *McKim* v.  *Odom*, 3 Bland, 407, 417, " in no other light than as the auxilia-ries of the government, and consequently as the secondary and deputy trustees and servants of the people.  The right to estab-lish, alter, or abolish such corporations seems to be a principle evi-dently inherent in the very nature of the institutions themselves, since all mere municipal corporations must, from the very nature of things, be subject to the absolute control of the government."  There is nothing *aliunde* section 17 to lead to the supposition that it was intended to extend to such corporations.  And see 1 Dillon on Municipal Corporations, § 30.

It may be remarked further that corporate powers are frequently conferred upon certain officers or official bodies or upon certain districts for public purposes, by reason whereof it becomes their duty to exercise the powers for those purposes in the same man-ner as if they were public corporations, although they have not been incorporated.  Such officers, bodies, or districts are denomi-nated *quasi* corporations.  In some states, the towns and coun-

ties are *quasi* corporations, having never been incorporated or declared to be corporations by legislative enactment. Angell & Ames on Corporations, §§ 18, 23, 24. Doubtless it is partly because of the frequency with which corporate powers are so conferred that it does not generally occur to the popular mind, when corporations are mentioned, that public as well as private corporations may be meant.

The defendants also contend that the General Assembly has in practice construed the section as not extending to public corporations, and that the court ought to follow its construction unless it is palpably erroneous. The General Assembly has passed acts incorporating such corporations, sometimes without either continuing the acts or giving notice, and sometimes without giving notice though the acts were continued. Such were the acts incorporating the towns of Pawtucket and East Providence, A. D. 1861, the town of Woonsocket, A. D. 1867, the towns of Lincoln and North Smithfield, A. D. 1871, and the Westerly Fire District, A. D. 1870. And there may be other such unknown to us. Besides these, there are numerous school districts which have become bodies corporate under general laws dating back to A. D. 1845, and which cannot be regarded as literary corporations, within the exceptions to section 17, without great laxity of construction. The General Assembly has always had its share of learned lawyers and experienced legislators, and it cannot be supposed that these omissions were so many times repeated by mere inadvertence, especially as it does not appear that section 17 as it applies to private corporations has ever been disregarded. The act by which the towns of Pawtucket and East Providence were incorporated was a part of the settlement of the Eastern Boundary question, in which the late Honorable Thomas A. Jenckes and the late Honorable Charles S. Bradley acted as counsel.

There are cases which give to the word " corporation " the narrow significance which the defendant contends for, even when used in a state constitution. The Constitution of Tennessee contains the following provision, to wit: " No corporation shall be created, or its powers increased or diminished, by special laws ; but the General Assembly shall provide by general laws for the organization of all corporations hereafter created, which law may

at any time be altered or repealed; and no such alteration or repeal shall interfere with or devest rights which have become vested." In *State* v. *Wilson*, 12 Lea, Tenn. 246, the question was whether this provision extended to public corporations, and the Supreme Court of Tennessee held that it did not, and so held notwithstanding it appeared that in the constitutional convention a motion was made to limit it to private corporations and was rejected. "Whatever may have been the motive of this action," say the court, "we are constrained to hold that the section itself, as adopted by the people, only applies to private corporations." See, also, *Ballentine* v. *The Mayor, etc., of Pulaski*, 15 Lea, Tenn. 633; *Luehrman* v. *Taxing District*, 2 Lea, Tenn. 425; *Mayor of Baltimore* v. *Root*, 8 Md. 95.

The argument for the prosecution is that the language of section 17 is limited only by the specified exceptions, and the court has no right to impose any other limitation; that it must be presumed that the framers of the section knew that it was broad enough to include public as well as private corporations, and that it must therefore be further presumed that they intended to have it include them. It is also argued that, conceding that the section originated in feelings and fears which related only to private corporations, it does not follow that it was not considered that the section could be extended with salutary effect to public corporations, since the creation of such corporations often interests and affects people, personally as well as politically, and the people specially affected thereby may have views and sentiments upon which they desire to be heard, and upon which it may be wise that they should be heard or represented.

The prosecutor cites the case of *Purdy* v. *The People*, 4 Hill, N. Y. 384. The question in that case was whether the provision of the Constitution of the State of New York, that "the assent of two thirds of the members elected to each branch of the legislature shall be requisite to every bill creating, continuing, altering, or renewing any body politic or corporate," extended to public corporations. The question was raised before the Supreme Court of the State in the earlier case of *The People* v. *Morris*, 13 Wend. 325, and was decided in the negative, Nelson, J., afterward Chief Justice of the court, and still later one of the Justices of the Supreme

Court of the United States, delivering the opinion. The ground of decision was that, when the New York Constitution was adopted, the multiplication of certain private corporations was regarded as a serious danger, and that the only purpose was to impose a salutary check upon it. And see, to the same effect, *People* v. *Mayor, &c. of New York*, 25 Wend. 680, and per Chancellor Walworth in *Warner* v. *Beers*, 23 Wend. 103, 126. In *The People* v. *Purdy*, 2 Hill, N. Y. 31, the question again came before the Supreme Court, Nelson, C. J., and Bronson and Cowen, JJ. Nelson, C. J., adhered to his former opinion; Cowen, J., concurred with him in decision, but on another ground; and Bronson, J., delivered a powerful dissenting opinion. The case was taken to the Court of Errors, being the case cited above as *Purdy* v. *The People*, 4 Hill, N. Y. 384, and there the decision of the Supreme Court was reversed. It was tried in the Court of Errors before the President of the Senate, Chancellor Walworth, and twenty two Senators. The vote was thirteen for and eleven against reversal, the president and the chancellor voting with the minority. The decision settled the question affirmatively for New York, but it may be doubted whether the weight of authority, taking the cases all together, was not the other way. However that may be, the New York cases differ from the case at bar in this, that in them the language was, " any body politic or corporate," and there was no claim that that phrase had come to signify, in common parlance, simply private corporations. On the contrary, the words have a technical ring about them, and the word "politic" especially, whatever its legal significance, would be likely to suggest to the popular ear a public or political body corporate; and in interpreting a constitution, the question is not so much how was it understood by its framers as how was it understood by the people adopting it. Moreover, Judge Bronson states in his opinion that, when the provision was before the New York constitutional convention, attention was drawn to the fact that it was broad enough to include public corporations, and that an amendment was proposed to limit its scope, but was not accepted.

The prosecutor cites cases decided under the constitutions of Ohio, Kansas, and Nebraska. Those constitutions severally declare that " the legislature shall pass no special act conferring corporate

powers," and the cases cited hold that special acts conferring new
or further powers on public corporations are within the provision.
In each of the constitutions the provision occurs in an article enti-
tled " Corporations," consisting of several clauses, one of which
declares that "provision shall be made by general law for the
organization of cities, towns, and villages," thus showing that pub-
lic corporations were within the purview of the article.  Doubtless
one purpose was to prevent the struggle of individual corporations
for special powers, and the danger of corrupt legislation incident
thereto; but there seems likewise to have been still another pur-
pose, namely, to save the law of corporations from the disorder,
complexity, and uncertainty which such special legislation, if per-
mitted, is sure to introduce, and this is a purpose which is appro-
priate to public as well as private corporations.  *The State* v. *The
City of Cincinnati*, 20 Ohio St. 18, 34, 35.  But, notwithstand-
ing these reasons for the construction, when the question came
up in *Commercial Bank* v. *City of Iola*, 2 Dillon, 353, before
Judge Dillon, author of the treatise on Municipal Corporations, in
the United States Circuit Court, that eminent jurist, though he
held himself bound by the state decision, remarked that it might
admit of some discussion, whether the provision was designed to
apply to municipal corporations, if the question were *res nova.*

In this conflict of argument and decision it will be good to con-
sider what the rule is which the courts observe in deciding whether
a statute is constitutional or not.  The question of constitutionality
is distinct from the question whether a statute, in its operation as
a law, is likely to work well or ill, the latter question being a
purely legislative question with which the courts have no concern.
The courts concede to state legislatures a legislative power which
is limited only by the Constitution, and they are therefore care-
ful not to declare a statute unconstitutional until they are clear
that it is so.  They assume that the legislators, being bound by
their oaths to support the Constitution, consider, when any act is
proposed for passage, whether it can be constitutionally passed,
and do not vote for the passage of it until every doubt has been
quieted.  In this view a becoming deference to the legislature in-
culcates caution.  " The question whether a law be void for its
repugnancy to the Constitution," says Chief Justice Marshall, " is

at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case." *Fletcher* v. *Peck*, 6 Cranch, 87, 128. The rule generally laid down is, that statutes should be sustained unless their unconstitutionality is clear beyond a reasonable doubt. A reasonable doubt is to be resolved in favor of the legislative action, and the act sustained. Cooley on Constitutional Limitations, *182 and cases cited. " Before an act is declared to be unconstitutional it should clearly appear that it cannot be supported by any reasonable intendment or allowable presumption." *People* v. *Supervisors of Orange*, 17 N. Y. 235, 241. " All intendments favor constitutionality." *Crowley* v. *State of Oregon*, 11 Oregon, 512. " Courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject, and never declare a statute void unless the nullity and invalidity of the act are placed, in their judgment, beyond a reasonable doubt." *Wellington et al., Petitioners*, 16 Pick. 87, 95, per Shaw, C. J. " It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed," says Justice Washington, " to presume in favor of its validity, until its violation of the Constitution is proved beyond all reasonable doubt." *Ogden* v. *Saunders*, 12 Wheat. 213, 270. Of course if courts are bound to be thus careful where a single statute involving a doubt has been passed, it behooves them to be still more careful, if possible, after several such statutes have been passed from time to time by different legislatures, without either question or protest. A long continued legislative construction is entitled to great weight with the courts, if not clearly erroneous.

If it were permitted to us to construe section 17 without regard to the action of the General Assembly, we should probably give to the word " corporation " its broad generic meaning, but we should do so not without some doubt whether, in so doing, we were not making the section more comprehensive than it was intended to be. We cannot construe the section without regard to the action of the General Assembly, and of course the respect due to the action of that body increases the doubt which we should have felt independently of it. If the act incorporating

the defendant district be unconstitutional, so likewise, it would seem, are the acts incorporating the aforenamed towns and fire district; and though it is true that the court cannot, consistently with its duty, refuse to recognize a violation of the Constitution where the violation is plain, still in cases of doubt the question of consequences is not to be ignored. Cooley on Constitutional Limitations, *67, *69. It seems to us that there is at least a reasonable doubt, if not something more, and that, all things considered, it is not our duty to declare the act incorporating the defendant corporation unconstitutional, because it was enacted without continuance and notice under section 17.

The prosecutor contends further that the act is unconstitutional because it is in effect an attempt to create a town without giving it the representation which the Constitution secures to towns in the General Assembly. We are not satisfied that this point is tenable. The District is within the town of South Kingstown, and is represented in the General Assembly as a part of it.

_Demurrer sustained and information dismissed._