PHILLIP D. VERBECK, Plaintiff, *v.* MABELLE H. VERBECK, Defendant.

Supreme Court, Special Term, Otsego County, July 15, 1946.

*V. H. Multer* and *H. R. Multer* for defendant.

*Van Horne & Feury* for plaintiff on original argument.

*Theodore P. Feury* for plaintiff on reargument.

DEYO, J.  In the early part of 1942, the plaintiff commenced an action for the annulment of his marriage with the defendant. The defendant entered a counterclaim for a separation.  On the defendant's motion she was awarded support *pendente lite*.  In January, 1944, the plaintiff commenced an action for divorce in the State of Pennsylvania.  The defendant appeared in that action and, among other things, attacked the jurisdiction of the Pennsylvania court on the grounds that the plaintiff was not a bona fide resident of that State and was not legally domiciled therein.  The trial of this issue was resolved in favor of the plaintiff and the decision of the Master in Chancery was duly affirmed and a decree of divorce granted to the plaintiff on November 14, 1945.  Now the defendant seeks to punish the plaintiff for contempt for his alleged failure to pay various installments of alimony granted *pendente lite,* accruing both before and after the granting of the Pennsylvania decree.

Section 1 of article IV of the United States Constitution requires that full faith and credit shall be given to the judicial proceedings of sister States.  Although the decision in the celebrated and oft-cited case of *Williams* v. *North Carolina* (317 U. S. 287) has raised considerable doubt as to the validity of foreign decrees based on constructive service and where there was no appearance neither that decision nor the decisions which have followed cast any doubt upon the conclusiveness of a determination reached after a trial in which both parties participated and wherein the jurisdictional facts were specifically litigated.  The Pennsylvania decree was an adjudication that the parties were no longer husband and wife and established their status as to the future.  (*Pearson* v. *Pearson,* 230 N. Y. 141.)   "It is no part of the public policy of this State to refuse recognition to divorce decrees of foreign states when rendered on the appearance of both parties, even when the parties go from this State to the foreign state for the purpose of obtaining the decree and do obtain it on grounds not recognized here."  (*Matter of Rhinelander,* 290 N. Y. 31, 36–37; see, also, *Vernon* v. *Vernon,* 288 N. Y. 503; *Hess* v. *Hess,* 276 N. Y. 486.)

In the instant case the foreign decree must be recognized, and since it dissolved the marriage between the parties as of Novem-

ber 14, 1945, both the annulment action and the counterclaim for a separation must, by necessity, be treated as terminated as of that date. Consequently, the original order directing the payment of alimony *pendente lite* loses all effectiveness from that time on.

The only payments which became due prior to that date, concerning which there is any substantial dispute, are the two checks dated September 26 and October 15, 1943, totalling $110. The evidence conclusively shows that these checks were forwarded to the defendant or her attorneys, but were returned by them to the plaintiff not cashed. Although the debt may not be extinguished by the tender of the checks, clearly, no proceeding for contempt is warranted under such circumstances.

The defendant's motion to punish the plaintiff for contempt is denied. Since the defendant may desire to pursue other remedies to collect the admittedly unpaid installments of alimony, the plaintiff's cross motion to discontinue the action and vacate the order is presently denied.

Submit order accordingly.

(On reargument, October 11, 1946.)

When this matter was first before me I concluded that both motions should be denied. In view of the importance of the principle involved, I have granted the defendant's motion for reargument to permit further examination and consideration of the problem presented.

Briefly, the facts are that during the pendency of an action for an annulment, commenced by the plaintiff, wherein the defendant had entered a counterclaim for a separation, and had been awarded support *pendente lite,* the plaintiff instituted an action for a divorce in the State of Pennsylvania. The defendant appeared in that action and among other things, attacked the jurisdiction of the Pennsylvania court on the grounds that the plaintiff was not legally domiciled therein. The trial of this issue was resolved in favor of the plaintiff and the decision of the Master in Chancery was duly affirmed and a decree of divorce granted to the plaintiff on November 14, 1945. Under these facts and pursuant to the full faith and credit clause of the Federal Constitution (art. IV, § 1), I reached the conclusion that the Pennsylvania decree was immune from collateral attack in this State, even on the question of jurisdiction and, therefore, since it dissolved the marriage between the parties as of November 14, 1945, both the annulment action and the counterclaim for a separation must, by necessity, be treated as terminated as

of that date, and that the original order directing the payment of alimony *pendente lite* lost all effectiveness from that time on. Consequently, I held as a matter of law, that there could be no contempt for failure to pay alimony accruing after the date of the divorce, and under the facts as presented on the former motion, there was no contempt in failing to make all of the payments accruing prior to that date. I find nothing in the authorities now submitted to me to warrant any change in my previous decision. Substantially all of the cases cited by the defendant, including the celebrated case of *Williams* v. *North Carolina* (317 U. S. 387; 325 U. S. 226) lacked that very important element herein presented: an appearance on the part of the defendant in the court of the sister State, and an actual litigation of the very issue now sought to be raised. In the Pennsylvania action the Master in Chancery " held full hearings and filed a report finding all the jurisdictional and essential facts." The defendant filed exceptions to those findings and the Court of Common Pleas conducted an independent examination of the matter, resulting in a finding by that court, " that the libellant (the plaintiff here), was a resident of Pennsylvania for one whole year prior to the filing of the libel," and granted the decree. Under the Pennsylvania case law of which judicial notice may be taken, pursuant to section 344-a of the Civil Practice Act, residence, within the meaning of the divorce statutes, " is a permanent one with domiciliary intent." (*Com. ex rel. Cronhardt* v. *Cronhardt,* 135 Pa. Superior Ct. 117, 121–122; *Huston* v. *Huston,* 130 Pa. Superior Ct. 501, 508.) There, as here, a bona fide domicile is an essential jurisdictional fact. (*Com. ex rel. Saunders* v. *Saunders,* 155 Pa. Superior Ct. 393.)

It must be conceded that as a general rule want of jurisdiction to render a particular judgment may always be raised either directly or collaterally. (*German Savings Society* v. *Dormitzer,* 192 U. S. 125.) This general rule was specifically applied to matrimonial actions in the decision following the second trial of *Williams* v. *North Carolina* (325 U. S. 226, *supra*). However, the court specifically pointed out at page 230, that after a contest wherein opportunity had been afforded to all who had an interest in the litigation to present their contentions, issues therein determined, including jurisdictional questions, cannot be relitigated by the same parties. As was said in *O'Donoghue* v. *Boies* (159 N. Y. 87, 99) : " The want of jurisdiction to render the particular judgment may always be asserted and raised directly or collaterally, either from an inspection of the record itself when offered in behalf of the party claiming under it, or

upon extraneous proof, which is always admissible for that purpose. There is but one solitary exception to this rule, and that is in a case where jurisdiction depends on a fact that is litigated in a suit and is adjudged in favor of the party who avers jurisdiction. Then the question of jurisdiction is judicially decided, and the judgment record is conclusive on that question until set aside or reversed by a direct proceeding.''

The court in *Matter of Doey* v. *Howland Co.* (224 N. Y. 30) relied upon by the defendant, also recognized this exception in the following language, at pages 38–39: '' The general rule is that lack of jurisdiction to render a judgment or determination may be asserted at any time, and the only exception of which I am aware is where jurisdiction depends upon a question of fact. If that be litigated and determined, then the question is settled by the judgment, which becomes final and conclusive unless set aside by a direct attack or reversed on appeal therefrom.''

Similarly, it was held in *Baldwin* v. *Traveling Men's Assn.* (283 U. S. 522) that where a party voluntarily appears, presents his case and is fully heard, in the absence of fraud, he is thereby forever concluded by the judgment of the tribunal to which he has submitted his cause. This was a case of a special appearance to test out the jurisdiction of the court. The court said at page 525: '' Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.'' (To the same effect see *American Surety Co.* v. *Baldwin,* 287 U. S. 156; *Davis* v. *Davis,* 305 U. S. 32, 40.) The foregoing decisions are not necessarily in conflict with *Andrews* v. *Andrews* (188 U. S. 14) cited by the defendant, in view of the peculiar Massachusetts statute relative to foreign divorce decrees then in effect in that State. As Mr. Justice Reed succinctly said in *Treinies* v. *Sunshine Min. Co.* (308 U. S. 66, 78): '' One trial of an issue is enough. ' The principles of *res judicata* apply to questions of jurisdiction as well as to other issues,' as well as to jurisdiction of the subject matter as of the parties.'' (*Hess* v. *Hess,* 276 N. Y. 486; *Tiedemann* v. *Tiedemann,* 172 App. Div. 819, 823, affd. 225 N. Y. 709, dismissed 251 U. S. 536; *Jones* v. *Jones,* 108 N. Y. 415; *Frost* v. *Frost,* 260 App. Div. 694.) This doctrine was left untouched by *Williams* v. *North Carolina* (325 U. S. 226, *supra;* '' Standish '' v. '' Standish '', 179 Misc. 564, 567), and was recognized in *Matter of Lindgren* (293 N. Y. 18) relied upon by the defendant. In the latter case the court

held that although the parties who had appeared in the Florida divorce action could not thereafter challenge the validity of the decree therein granted, such parental disability would not be visited upon a child of the marriage who thereafter sought letters of administration.

The recent decision in *Shea* v. *Shea* (270 App. Div. 527) seems to be conclusive on this question. The court therein said at page 530: "In this State, in personal appearance cases, a foreign divorce decree may not be attacked collaterally where the issue of residence was contested in the foreign jurisdiction * * *, nor where, although the opportunity to do so was present, the issue was not litigated." After pointing out that the public policy of this State was not offended when citizens originally domiciled here, go to another jurisdiction to obtain a divorce on grounds which do not obtain in this State (*Matter of Rhinelander*, 290 N. Y. 31, 36), the court went on to say at page 532: "When a foreign court acquires jurisdiction in personam of the parties to the marital status, has jurisdiction of the subject matter, and adjudicates upon the question of domicile, the validity of its decree, in this State, is the concern only of the parties and the State. In the absence of fraud in procuring an appearance of either spouse, the parties are bound and, under these circumstances, since its public policy is not offended, this State accords full faith and credit to the decree and, in that sense, is also bound. Such a judgment is immune to collateral attack." Note that motion for leave to appeal was granted, but only on the question of the right of a third person to attack such a decree. (*Shea* v. *Shea,* 270 App. Div. 906.)

Without discussing all of the cases cited by the defendant, an examination of them will indicate that in the main they fall into four categories. There are those wherein personal service was not effected within the sister State and there was no appearance. Under such circumstances, the domicile of the parties is subject to collateral attack without doing violence to the full faith and credit clause of the Constitution. (*Williams* v. *North Carolina,* 325 U. S. 226, *supra.*) There are those cases concerning decrees of foreign countries, such as *Martens* v. *Martens* (284 N. Y. 363) which obviously have no concern with the full faith and credit clause. There are those where fraud was practiced in securing the appearance, or the participation on the trial or both, such as *Averbuck* v. *Averbuck* (270 App. Div. 116) where, because of such fraud, the judgment is not entitled to the protection of the full faith and credit clause. Finally, there are those where some third person seeks to attack the decree

of the sister State, under which circumstances there is apparently some difference of opinion as to whether or not such third person is bound by the judgment insofar as a collateral attack upon the jurisdiction of the court is concerned. (Cf. *Matter of Lindgren, supra; Shea* v. *Shea, supra*). None of these cases involved the situation which confronts us here where we have not only an appearance, but actual litigation of the question of domicile — the very question herein raised. As has been previously pointed out, the courts of this State, under the full faith and credit clause of the Federal Constitution, may not entertain a collateral attack upon the decree of a sister State rendered under such circumstances.

Our attention is particularly called to the case of *Solotoff* v. *Solotoff* (51 N. Y. S. 2d 514). It appears in that case that on January 4, 1941, the plaintiff commenced a separation action, and on January 20, 1941, an order was entered awarding her alimony *pendente lite*. On December 23, 1942, the defendant obtained an Ohio decree of divorce after service by publication and an appearance on the part of the plaintiff, on the basis of which, and on March 14, 1944, he, the defendant, was awarded summary judgment dismissing the New York action. The plaintiff then sought to enter judgment pursuant to section 1171-b of the Civil Practice Act for alimony accruing prior to March 14, 1944. The court held that the Ohio decree, " in which action the plaintiff appeared," terminated her rights for alimony *pendente lite* " for all periods subsequent to that decree " and granted an order to enter judgment only for the amount accrued up to December 23, 1942, the date of the Ohio decree. On appeal, the order granting the motion for summary judgment was reversed. (269 App. Div. 677, leave to appeal denied 269 App. Div. 777). It appears, however, that although the plaintiff appeared in the Ohio action, her answer was not timely served and a default decree against her was entered followed by a motion for a new trial, which was denied. The most that can be said for this decision, therefore, as HAGARTY, J., pointed out in his concurring opinion at page 678, is that the appearance of the plaintiff in the court of the sister State was not sufficient, under the peculiar facts of that case, to vest such court with final and conclusive jurisdiction to determine the question of the domicile of the defendant, " at least in the absence of actual litigation in that action of that issue." I cannot concede that this decision is contrary to those cases previously discussed, which hold that an appearance alone is sufficient under the full faith and credit clause to prevent a collateral attack on the jurisdiction of a sister State. In those cases there was an

appearance and apparently, at least, an opportunity to be heard. In the *Solotoff* case (*supra*) there was an appearance but the opportunity to be heard was denied. At any rate, the case cannot be said to have established the proposition that once a party has appeared and actually litigated the issue of domicile he may again relitigate that selfsame issue in the courts of every one of the forty-eight States, which is exactly what the defendant in the instant case seeks to do.

I am also convinced that I was correct in my refusal to hold the plaintiff in contempt of court for failure to pay alimony granted *pendente lite*, and which accrued after the date of the Pennsylvania decree. The plaintiff's obligation to make further payments terminated upon the entry of that decree, which destroyed the marital relation and all rights and duties arising thereunder. (*Scheinwald* v. *Scheinwald*, 231 App. Div. 757; *Turkus* v. *Turkus*, 180 Misc. 857; *Solotoff* v. *Solotoff*, 51 N. Y. S. 2d 514, *supra*.) I am not unmindful of the decision reached in *Harris* v. *Harris* (197 App. Div. 646) and followed in *Dube* v. *Dube* (230 App. Div. 494), *Almquist* v. *Almquist* (182 Misc. 286) and *Dollard* v. *Dollard* (51 N. Y. S. 2d 196) which seems to hold under circumstances similar to those herein presented that the obligation to pay continues until a modification of the order or decree. Perhaps, as was suggested in *Turkus* v. *Turkus* (180 Misc. 857, 859, *supra*) the motion papers were not properly framed. Had the marital relationship been terminated in this State the right to punish for contempt for failure to pay alimony *pendente lite* would not have survived that decree. (*Mittman* v. *Mittman*, 263 App. Div. 384.) In any event, since the marriage relationship was abolished, I fail to see any necessity for obtaining any order terminating any of the benefits flowing from and based upon such relationship, and I again decline to hold the plaintiff in contempt. *Treherne-Thomas* v. *Treherne-Thomas* (267 App. Div. 509) cited by the defendant, has to do with a proceeding under section 1171-b of the Civil Practice Act, and is not contrary to this view.

I will, however, make one change in my previous decision. Since the plaintiff has made it known that he stands ready to pay the arrears found to be due at the date of the Pennsylvania decree, I will grant his cross motion for a discontinuance of the action and to vacate the existing order dated June 8, 1942, on condition that the plaintiff pay to the defendant or her attorney, by certified check or cash, the sum of $110, plus $10 costs and disbursements.

The defendant's motion to punish the plaintiff is again denied. Submit order accordingly.