LILLIAN LYNN, Plaintiff, *v.* JAY J. LYNN, Defendant.

Supreme Court, Special Term, New York County, August 4, 1948.

*Samuel Gottlieb* for plaintiff.

*Bijur & Herts* for defendant.

WALTER, J. A judgment of separation obtained by plaintiff wife in this court in 1942, directs defendant husband to pay

plaintiff $85 per week for the support, maintenance and education of herself and the daughter of the parties.

After the entry of such judgment, defendant husband went to Nevada and there brought suit for divorce. The wife was served with process in New York only, but she appeared in the action and interposed an answer in which she denied her husband's allegation that he was a bona fide resident of Nevada as well as his allegation that she had been guilty of extreme cruelty. She also affirmatively pleaded her New York judgment of separation. After a trial at which the wife was present in person as well as by attorney, the Nevada court found that the husband was a bona fide resident of Nevada and that the wife had been guilty of extreme cruelty and had made no cross complaint or prayer for alimony, support or maintenance; and on July 13, 1943, it entered its judgment granting the husband a divorce and again affirmatively adjudging that there had been no claim for alimony, maintenance or support.

The wife now moves in this action by order to show cause served June 11, 1948, returnable June 22, 1948, to amend the judgment herein so as to provide that defendant pay her $6,046.63 to pay medical, hospital, and nursing expenses incurred for the daughter and herself, and so as to increase the alimony to $200 per week.

In her affidavit in support of the motion, plaintiff says that in the Nevada action she did not contest defendant's Nevada residence because she then believed it to be bona fide, but that she has since learned that his Nevada residence was sham and fictitious. The fact is, however, that she did put the *bona fides* of his Nevada residence in issue by denying his allegation thereof in his complaint and the *bona fides* of his Nevada residence and the consequent jurisdiction of the Nevada court to entertain his suit and award a divorce must now be deemed finally and conclusively settled (*Sherrer* v. *Sherrer*, 334 U. S. 343; *Coe* v. *Coe*, 334 U. S. 378).

True of course it is that the jurisdiction of the Nevada court depended upon the husband's residence (domicile) in Nevada as well as upon proper service of process upon the wife, and whether or not the husband was a bona fide resident of Nevada was a question of fact; and the Nevada court could not acquire jurisdiction by asserting it, and its mere assertion of it would not preclude investigation of the fact in New York or any other State in which the Nevada judgment might be set up. The general rule thus is that a court's lack of jurisdiction to render a judgment may be set up whenever and wherever the judgment

is asserted. But jurisdictional questions, whether of law or of fact, like all other questions, become *res judicata* by being litigated, and where a question of fact upon which jurisdiction depends is raised and judicially decided in the suit in which the judgment is rendered that fact is conclusively settled by that judgment and cannot be relitigated (*O'Donoghue* v. *Boies,* 159 N. Y. 87, 99; *Matter of Doey* v. *Howland Co.,* 224 N. Y. 30, 38–39; *Baldwin* v. *Iowa State Traveling Men's Assn.,* 283 U. S. 522; *American Surety Co.* v. *Baldwin,* 287 U. S. 156, 166–167; *Stoll* v. *Gottlieb,* 305 U. S. 165, 172; *Davis* v. *Davis,* 305 U. S. 32; *Chicot Co. Drainage Dist.* v. *Baxter State Bank,* 308 U. S. 371, 377; *Williams* v. *North Carolina,* 325 U. S. 226, 230; *Sherrer* v. *Sherrer, supra; Coe* v. *Coe, supra*).

Whether or not the wife did in fact offer evidence as to the husband's Nevada residence upon the trial of the Nevada action is immaterial, because she raised the issue and so far as appears she had full opportunity to litigate it; and it was adjudicated (*Jackson* v. *Irving Trust Co.,* 311 U. S. 494, 503; *Heiser* v. *Woodruff,* 327 U. S. 726, 735; *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.,* 250 N. Y. 304, 306–307). The force of an adjudication as *res judicata* does not depend upon whether the case was well or poorly tried, or whether an issue raised was fiercely or only moderately contested, or even upon whether the result reached was right or wrong.

*Sherrer* v. *Sherrer* and *Coe* v. *Coe* (*supra*) finally settle the point, much considered since *Williams* v. *North Carolina* (*supra*), that where one spouse goes to another State and sues for divorce, and the other spouse appears and contests the fact of the *bona fides* of the residence of the first spouse in the other State, and the divorce is granted, the State from which the spouse came and all others must recognize the jurisdictional validity of such divorce and may not permit either of the spouses to relitigate the fact of residence in the State in which the divorce was granted.

Of course, if there were some fraud or other illegal act which in fact prevented plaintiff from having a fair trial on the question of her husband's Nevada residence, she would have some remedy therefor, but I think it would be by a direct attack upon the judgment in Nevada and not by an incidental collateral attack here.

The situation here thus is that a New York judgment of separation with alimony has been followed by a divorce, and the former wife moves to increase the alimony provided in the separation judgment. Defendant, ex-husband, has not made

any cross motion to strike the alimony provision from the New York judgment but he asserts in his answering affidavit that the divorce " supersedes " the alimony provision of that judgment — an expression which, although borrowed from some of the cases, is, I think, an indication of loose and confused thinking, as I shall hereinafter endeavor to show.

In *Turkus* v. *Turkus* (180 Misc. 857) I held, upon authorities which I still think required the holding, that a husband's obligation to pay the alimony specified in a judgment of separation terminates upon the entry of a judgment of divorce because the divorce so completely destroys the marital relation that no further rights and hence no correlative obligations then spring from it; and I there modified the separation judgment by striking out the alimony provision as of the date of the divorce.

The same view was taken in *Verbeck* v. *Verbeck* (187 Misc. 750); and see, also, *Burton* v. *Burton* (150 App. Div. 790, 792) and *Tonjes* v. *Tonjes* (14 App. Div. 542, 545); and note that *Richards* v. *Richards* (87 Misc. 134) was affirmed (167 App. Div. 922).

Since then, however, there has come the case of *Estin* v. *Estin* (296 N. Y. 308) in which the Court of Appeals affirmed a judgment which awarded the wife arrears of alimony under a New York separation judgment which accrued after the husband had obtained a Nevada divorce and which denied a cross motion by the husband to strike the alimony provision from the separation judgment.

Does that mean that the authorities upon which I relied in *Turkus* v. *Turkus* (*supra*) and all other decisions to the same effect have now been overruled and that it is now the law of New York that divorce does not terminate a man's obligation to support the woman who was his wife?

I find it difficult to believe that that is so. For if that had been intended it seems to me that it would have been so stated in the *Estin* case (*supra*), clearly and expressly and in words that would not be misunderstood; and yet the fact is that it is not therein so stated at all.

Even so, if the result reached in the *Estin* case (*supra*) cannot be explained on any ground other than a flat repudiation of what earlier cases had declared the law of New York to be, I suppose I would have to conclude that, however unusual it is for a court to overrule prior decisions and lay down a new rule without expressly saying so, that unusual thing neverthless has been done in this instance.

My anxious inquiry thus has been, what is the true explanation of the *Estin* case (*supra*), and to me the striking thing about it, in addition to its failure to say that a new rule is being laid down, is that from Special Term to the Court of Appeals every one concerned in it seems to have become so enmeshed in the complex and complicated questions of full faith and credit and the operative effect of one judgment upon another that the plain and simple proposition that termination of the marital relation terminates the man's obligation to support was really lost sight of. The husband's original opposition to the wife's motion for judgment for arrears of alimony invoked the full faith and credit clause of the Constitution and the superiority of the Nevada divorce over the New York separation (see 296 N. Y. at p. 311). The opinion of Mr. Justice HALLINAN at Special Term (63 N. Y. S. 2d 476, 477) casually mentions cessation of liability by reason of divorce, but, without citation of authorities upon or consideration of that point, it immediately goes off to the constitutional questions. The Appellate Division affirmed without opinion (271 App. Div. 829). The Court of Appeals denied leave to appeal on the ground that there was an appeal as of right because constitutional questions were involved (296 N. Y. 828). The case thus got to the Court of Appeals on the theory that constitutional questions, not a question of starting a new rule on a question of local law, were the things for consideration; and the opinion of LOUGHRAN, Ch. J. (296 N. Y. at p. 311), seems to me plainly to show that the court regarded itself as deciding constitutional questions only.

Furthermore, the opinion of LOUGHRAN, Ch. J., and the opinion of the United States Supreme Court affirming the judgment of the Court of Appeals (*Estin* v. *Estin,* 334 U. S. 541), both advert to the fact that in the *Estin* case (*supra*) the wife was not served with process in Nevada and did not appear in her husband's suit there, and I thus think there is considerable support for the suggestion of defendant's counsel that the real explanation of the *Estin* case is that, although the Nevada court there had complete jurisdiction to grant a decree of divorce which New York must and did recognize as valid, it yet had no personal jurisdiction over the wife and consequently could not destroy her right to alimony under her New York judgment of separation.

The factual difference that in the *Estin* case (*supra*) the Nevada court had no personal jurisdiction over the wife, whereas in this case it had such jurisdiction by virtue of her appearance in the husband's suit, thus might be a sufficient reason for treating *Estin* v. *Estin* (*supra*) as not applicable to this case;

and that fact coupled with the fact that in *Estin* v. *Estin* (*supra*) the Court of Appeals did not say in terms that earlier decisions that an alimony provision does not survive divorce were overruled and a new rule that it may so survive was being laid down, seems to me sufficient to justify me in continuing to follow the authorities upon which I relied in *Turkus* v. *Turkus* (*supra*).

As a further reason for that, however, I desire to explain the importance and significance I attach to the fact that the courts treated the *Estin* case (*supra*) on the basis of constitutional questions.

When one is thinking in terms of full faith and credit and the question is posed whether New York must recognize that Nevada, without acquiring personal jurisdiction over a wife, can destroy a right to money which she has under a New York judgment of separation, the answer, inevitably, I would say, must be no.

But if one is thinking in terms of alimony as a provision for a wife and the question is posed whether termination of the relation of husband and wife terminates the obligation to pay alimony, the answer, just as inevitably it seems to me, must be yes.

The first of the two illustrations just put seems to me to describe what happened in the *Estin* case ·(*supra*); and the fact that in that situation the Court of Appeals said no, does not seem to me to require me to say that it consciously said no to the question put in the second of these illustrations.

Furthermore, great confusion must necessarily result, it seems to me, from talking about the effect of the Nevada decree upon the New York separation judgment, or the power of Nevada to nullify or supersede alimony provisions of a New York judgment, or the interest New York has in seeing that one of its residents does not become a public charge by reason of being deprived of alimony. The plain, simple, obvious thing, in my opinion, is that the Nevada decree does not in any way operate upon or affect or nullify or supersede the New York judgment or any provision thereof, and no one attempts to have it do so. It operates upon and affects, by changing, an existing status (the marital relation), and it is that change of status, not the Nevada decree itself, which then operates upon and affects and puts an end to the continued obligation of the New York judgment; and the fact that thinking in terms of the operation of one judgment upon another tends to make one forget that vital distinction strengthens my belief that in the *Estin* case (*supra*) the Court of Appeals did not in reality intend to change the elementary doctrine that termination of marital status termi-

nates the support obligation which arises out of and rests upon that status.

So, too, the interest New York has in seeing that one of its residents does not become a public charge is highly appropriate in considering the mutual adjustments of State interests that have to be made in enforcing the full faith and credit clause of the Constitution; but it is utterly irrelevant, it seems to me, in determining whether a man is obligated to support a woman who once was but no longer is his wife. To make a man continue to support a woman who is no longer his wife because without such support she might become a public charge, would be just as lacking in sense, it seems to me, as to refuse a divorce to a man who proved that his wife had committed adultery because the wife might become a public charge if divorced.

It is merely conjuring up an alibi to say that the wife is deprived of alimony by a Nevada divorce obtained by her husband. She is deprived of alimony in the same way and for the same reason that she is deprived of her husband, viz., her own conduct in doing things which a court, after hearing her, finds sufficient to entitle the husband to a divorce; and I see neither sense nor justice in trying to disguise or obscure that simple fact by ponderous phrases about extraterritoriality, full faith and credit, superiority of one judgment over another, and the like, or by attempting to divide the effect of a divorce by saying that it ends the marital relation in all respects except the man's obligation to support the woman.

The United States Supreme Court did indeed treat the decision of the Court of Appeals in *Estin* v. *Estin* (*supra*) as holding, as a matter of State law, that a support order can survive divorce.; and it so treated it despite Mr. Justice JACKSON's statement that his understanding of New York law was the other way, and Mr. Justice FRANKFURTER's statement that he was unable to tell what the New York law was and recommended remanding the case to the New York Court of Appeals for clarification of its rationale.

But the New York Court of Appeals itself obviously thought that it was deciding a constitutional question, not a question of State law; and for the reasons stated my conclusion is that the authorities upon which I relied in *Turkus* v. *Turkus* (*supra*), and the other decisions to the same effect, have not been overruled by *Estin* v. *Estin* (*supra*).

That would lead to a modification of the separation judgment by striking out the provision for alimony to plaintiff, but of course not the provision for the support of the daughter. Inas-

much, however, as defendant has not moved for that relief it should not be granted upon this motion.

It is suggested that the Nevada decree is not binding upon the daughter and she is not precluded from attacking it. Under *Matter of Lindgren* (293 N. Y. 18) and *Urquhart* v. *Urquhart* (188 Misc. 613, affd. 272 App. Div. 60, affd. 297 N. Y. 689), that may be so, although neither of those cases presented a situation in which the fact of residence in the State where the divorce was granted had been there raised and litigated. It is not necessary to decide the point, however, for while the daughter makes an affidavit in support of plaintiff's motion there is nothing in the papers which justifies me in treating the motion as an attack by the daughter upon the validity of the divorce, and nothing to indicate that she has any interest in attacking it.

Insofar as the motion asks for extra money for medical expenses, *Karminski* v. *Karminski* (260 App. Div. 491) seems sufficient to require its denial.

The request for increase of the weekly sum specified in the separation judgment is not separated as between plaintiff and the daughter, and the matter has not been presented on the basis of there being a need for an increase if the daughter alone be considered; and as I hold that in view of the divorce defendant's obligation to support plaintiff has terminated, the proper course is to deny the motion in its entirety. It is so ordered.