Virginia Frances MACKESSY, Plaintiff, v.
John J. MACKESSY, Defendant.
Civ. Nos. A–8607, A–9675.

District Court, Alaska. Third Division, Anchorage.
Dec. 31, 1954.

William W. Renfrew, Anchorage, for plaintiff.
Earl M. Gregory, Jr., Seward, for defendant.

McCARREY, District Judge.

April 16, 1953, the plaintiff filed suit for divorce in this court in cause A–8607. She prayed for an absolute divorce, determination of property rights, alimony, and attorneys'. fees. In conformance with plaintiff's motion, an order was entered by this court on April 24, 1953, requiring defendant to pay plaintiff $170 per month during the pendency of the action. After a hearing in which defendant had been ordered to show cause why he should not be held in contempt for failure to comply with the court's order of April 24, the cause was dismissed by this court on March 19, 1954, on the ground that the parties had reconciled. Immediately upon dismissal, and while the defendant was still in the court, plaintiff filed a second complaint identical with the one dismissed. Another restraining order was entered against defendant on March 22, 1954, which required that defendant pay $150 per month pending determination of the suit. Defendant failed to comply with the order of March 22, nor to answer or otherwise plead; thus, plaintiff had a

default entered on April 26, 1954, and on September 13, 1954 the court entered an order to defendant to show cause why he should not be held in contempt for failure to comply with the court's order of March 22, 1954.

At the hearing on this order to show cause, defendant contended that this court had no jurisdiction to hold him in contempt because defendant had obtained a valid foreign divorce, and proffered a certified copy of the foreign decree. (Previously, on June 11, 1954, the court had denied defendant's motion to dismiss the action on this ground.) The certified copy of divorce decree, and defendant's affidavits, revealed that defendant instituted divorce proceedings on September 30, 1953, in the 8th Judicial District, Kootenai County, Idaho, and that the plaintiff in that action was personally served in Tacoma, Washington, in October of 1953. They further revealed that the plaintiff appeared especially to contest the jurisdiction of the Idaho court, and that that court found the defendant was a bona fide domiciliary and resident of the state of Idaho, and awarded the defendant an absolute decree of divorce on May 17, 1954.

The only question now before this court is whether, in view of the Idaho divorce secured by defendant, this court has any power to hold defendant in contempt for his failure to comply with this court's order pendente lite of March 22, 1954.

It is academic that the basis for jurisdiction in divorce proceedings is domicile. If a decree of divorce is rendered where both parties are domiciled, it must be recognized in a sister state under Article 4, Section 1, of the Constitution of the United States; i. e., the full faith and credit clause. If it is rendered by a state where neither party is domiciled, since there is no jurisdiction in such state to render a divorce, it need not be.

On the question of the recognition which the Constitution demands, where the decree is rendered at the domicile of one party only, there was until recently the leading case of Had-

dock v. Haddock, 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867. In that case, the parties had been married in New York where both lived at the time. The husband went to Connecticut, established his domicile there, and secured a divorce in that state, the absent wife being served by publication only. Later the wife brought a separation suit against Haddock in New York. In defense thereto, the defendant set up the decree he had obtained in Connecticut. This was rejected by the court in the New York proceedings. Upon appeal to the U. S. Supreme Court, it was held that there was no violation of the requirement of full faith and credit. In the Haddock decision, there was nothing to prevent a court from refusing to recognize a foreign divorce where there was no personal service or voluntary appearance by the opposing party, though as a matter of practice, most states did give effect voluntarily to such a divorce decree both before and after the Haddock decision.

In 1942, by Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, decided December 21, 1942, this was swept away and Haddock v. Haddock expressly overruled. There North Carolina litigants went to Nevada, stayed there for the statutory period, obtained divorces from their former spouses, married each other and came back to North Carolina to live. They were convicted of bigamy in spite of the defense set up that the Nevada decree had freed them from the previous bonds of matrimony, hence they were free to re-marry. On appeal, the Supreme Court, assuming that the spouse who got the divorce was domiciled in Nevada, decided that North Carolina must give full faith and credit to the Nevada divorce. The rule of the case was that a divorce secured at the domicile of one spouse only is entitled to recognition in other states under the full faith and credit clause, and that the decree need not be rendered by a court in the matrimonial domicile to be entitled to full faith and credit.

In the first Williams case, the Supreme Court was proceeding on the premise that the spouse who obtained the di-

vorce was domiciled in Nevada. It did not then have the issue of whether such domicile existed before it. In the second Williams case, decided in 1945, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, the Supreme Court held that a decree of divorce rendered in one state may be collaterally impeached in another by proof that the court which rendered it had no jurisdiction, even though the record of the proceedings in that court purported to show jurisdiction. In this case, the North Carolina court inquired into the jurisdiction of the Nevada court and found that Nevada had no jurisdiction to render the divorce decree for the reason that the spouse who secured the divorce in Nevada was not a bona fide domiciliary thereof. The Supreme Court upheld this finding and held that since Nevada had no jurisdiction to render the decree, it was not entitled to full faith and credit. However, the rule of the second Williams case is modified to the extent that, if both parties appear, dispute and litigate the domiciliary question, as to them the question is res judicata. Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26.

In summary, the following propositions appear to apply when full faith and credit is asked to be given to an extraterritorial or foreign divorce:

1. Domicile is the basis of jurisdiction in divorce cases;

2. The domicile of both parties has jurisdiction to render a divorce which must be recognized in sister states.

3. In a state issuing a decree of divorce wherein neither spouse is domiciled in fact, a decree rendered by such state need not be recognized elsewhere.

4. The domicile of only one spouse has jurisdiction to render a decree of divorce which must be given full faith and credit. First Williams case, overruling Haddock v. Haddock.

Provided:

(a) The party obtaining the foreign divorce must have been a bona fide domiciliary of the state rendering the di-

vorce, and though there is a presumption of domicile and jurisdiction, the state or jurisdiction which is asked to enforce the decree may inquire into whether there was, in fact, a bona fide domicile in the rendering state.

(b) Such inquiry may not be made, however, where the question of domicile was litigated in the rendering state. See generally Goodrich on Conflict of Laws, 3rd Edition, Chapter 101, page 395, et seq.

■ In applying these facts to the case in question, had defendant secured his divorce prior to the institution of plaintiff's suit in Alaska, this court would be compelled to give full faith and credit to the Idaho decree. Had the wife ignored the Idaho suit, this court would have been free to examine the fact of the husband's domicile, and, had it determined that defendant was not a domiciliary of that state —which appears to be the fact—the Idaho decree could have been rejected and denied recognition. However, since the wife did appear especially to contest the jurisdiction of the Idaho court, that issue is res judicata and cannot now be inquired into by this court.

Now, to the answer to the sole question, supra, in this case:

■ Ordinarily the court which first acquires lawful jurisdiction withdraws jurisdiction from every other court insofar as it is necessary to accomplish the purpose of the litigation and further, the court of original jurisdiction is entitled to retain such control as is requisite to effectuate its final judgment or decree therein, free from the interference of every other tribunal. 14 Am.Jur., Courts, § 245, page 437. An exception to this rule arises when a person suing in one state subsequently begins an action in another state against the same parties on the same matters, 14 Am.Jur., Courts, § 246, page 440, although the exception was not followed in the case of Commerford v. Commerford, Sup., 54 N.Y.S.2d 563.

In the instant case, this court originally acquired jurisdiction of this divorce action on April 16, 1953, while the defendant did not file for his divorce in Idaho until September of 1953, yet the original Alaskan action was dismissed March 19, 1954, and the second case was then filed March 19, 1954; thus the Idaho filing is prior to the second cause being filed in Alaska.

█ █ The question of prior acquired jurisdiction is hence simplified by the dismissal of the Alaskan action, and upon that basis this court has no alternative but to recognize the Idaho decree as final. Nevertheless, there is authority for the proposition that the marital status dissolved by the foreign decree is separable from its incidents; i. e., maintenance for the wife. Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561. A distinction is drawn by some courts where there is an appearance by the wife in a foreign separate maintenance suit or divorce, and that court passes upon alimony, or where the question of alimony could have been litigated. Lynn v. Lynn, 302 N.Y. 193, 97 N.E.2d 748, 28 A.L.R.2d 1335, 1347, certiorari denied 342 U.S. 849, 72 S.Ct. 72, 96 L.Ed. 640. Other courts, however regardless of personal appearance or litigation of the alimony question, hold that the obligation of support is incidental to, and depends upon, the existence of the marital status, and that once the latter is ended, there is nothing to support a suit for alimony or separate maintenance.

A research of the law on the facts of the instant case reveals that the authorities are in conflict. Classic examples of this fact are found in the case of Verbeck v. Verbeck, 187 Misc. 750, 63 N.Y.S.2d 419, 65 N.Y.S.2d 265. In this case, a New York support order pendente lite entered in the husband's action for annulment of the marriage, to which the wife counterclaimed for a separation, was held to be terminated by a Pennsylvania divorce obtained by the husband, as of the date of the divorce decree. The court in that case held that the husband's obligation to make further payments under the pendente lite separate maintenance order

(which is on all fours with the instant case) was terminated upon the entry of the Pennsylvania divorce decree, which destroyed the marital relation and all rights and duties thereunder.

On the other hand, the case of Metzger v. Metzger, 32 Ohio App. 202, 167 N.E. 690, held that divorce and alimony are two separate causes of action. In the Metzger case the wife had filed a suit in Ohio for temporary and permanent alimony in April, while in the following November the husband obtained a divorce in Nevada, in which the wife appeared personally, but in which she did not litigate the question of alimony.

I am of the opinion that the theories of "separable incidents" and "divisible rights", supra, are more in keeping with sound public policy, since generally the husband has control of the finances; is not tied down with the care of the children; by nature and by reason of employment is inclined to be more transitory, etc., as is evidenced by the facts in the case before us.

 I find, therefore, that this court must give full faith and credit to the Idaho decree of divorce only, which was obtained on May 17, 1954, but find that the defendant is in contempt of court for his failure to make certain separate maintenance payments pendente lite of $170 per month, and attorney fees in conformance with the order entered on April 24, 1953, in Cause No. 8607, and the further order of the court for temporary support in Cause No. 9675, signed by the court on March 22, 1954, up to the entry of the Idaho decree, and for such contempt I hereby impose a fine of $100, to be paid within 30 days from the entry hereof.

I further find that the question of alimony and property rights were not litigated in the Idaho action, and therefore find that this court has jurisdiction to determine the same, upon the final hearing of this matter in Cause No. A–9675.