ROXALENE DICKINSON NEVIN *vs.* OGDEN NEVIN.

MARCH 18, 1959.

PRESENT: Condon, C.J., Roberts, Andrews, Paolino and Powers, JJ.

PAOLINO, J.   This is a bill in equity for an accounting and for specific performance of the provisions of a property settlement agreement and a final divorce decree of a Nevada court.   After a hearing in the superior court on bill, answer and proof, a decree was entered granting the relief prayed for.   From such decree the respondent has appealed to this court.

The parties were married in 1923.   They came to Rhode Island in 1945 and established a home in Jamestown where they continued to live until the latter part of September 1953.   Marital differences existing between them resulted in complainant's decision in 1953 to institute divorce proceedings.   At this time they were living in a house which stood in both their names.   The complainant's attorney arranged a property settlement between the parties by means of certain correspondence which consisted of a letter dated September 29, 1953 and a carbon copy thereof. The letter and copy were sent to respondent by complainant's attorney under his signature.

The letter stated that Roxalene D. Nevin was willing to go to Reno, Nevada, and get a divorce, and that she would pay all expenses connected therewith provided respondent would agree to pay her, beginning December 1, 1953, one half of his income from a certain trust estate in which he was one of the beneficiaries.   It further stated that at the time of said agreement he was to give her a deed to their house and certain furniture with the understanding that he could stay in the house until February 1, 1954, provided he made the mortgage payments as long as he remained. If satisfied with such proposals, respondent was therein requested to sign and return the carbon copy as evidence of his acceptance of the agreement and of complainant's authority to request the trustee of the estate in question to

send one half of respondent's income from such estate to her. The respondent signed the carbon copy and returned it to complainant's attorney, but before doing so he added thereto a provision that such payments would cease upon her remarriage.

The complainant testified that after the September 29, 1953 agreement was signed she left Rhode Island and moved to Nevada where she engaged counsel and in due time filed a petition for divorce. It appears from the evidence that she had received the deed to the house and furniture before leaving for Nevada. Her petition was subsequently heard on its merits. Thereafter the Nevada court on November 25, 1953 awarded complainant a final decree of divorce after noting that respondent was represented by his own attorney. The court specifically found that complainant was an actual and bona fide resident of that state, having resided therein for the required length of time with the intent to remain indefinitely and make Nevada her home. On the basis of such finding that court decided that it had jurisdiction of the parties and of the subject matter.

A certified copy of the Nevada decree is in evidence. It appears therefrom that the court ratified, adopted and approved the September 29, 1953 agreement which was incorporated by reference and made part of the decree. The parties were expressly ordered to carry out the terms and provisions of said agreement. The respondent has not appealed from such decree.

The evidence discloses that respondent remarried on December 29, 1953, about one month after the entry of the Nevada decree; that complainant continued to live in Nevada for two and a half or three months and then returned to Jamestown, Rhode Island; and that from December 1, 1953 to the time of the instant hearing she has received a total of $5,897.06 in monthly allotments from respondent. However, according to her testimony, because she had no knowledge of the amount of money respondent had

been receiving from the trust estate and because she had been unable to get such information from either the respondent or the trustee, she filed the instant bill of complaint on July 7, 1956.

The bill sets out in substance the facts which we have referred to herein. It also alleges that respondent has withheld from complainant funds to which she is rightfully entitled under the September 29, 1953 agreement and the Nevada decree. The bill contains prayers for specific performance of the agreement and of the provisions of the Nevada decree. The complainant also seeks an accounting of all income received by respondent from the trust estate from December 1, 1953 and prays that he be ordered to pay her any arrearages which may be found to exist.

The complainant's testimony corresponds substantially with the allegations in the bill of complaint. She testified that she had not remarried and presented evidence that respondent had paid her less than the amount to which she was entitled. The respondent's testimony is based on his attempt to prove that the September 29, 1953 agreement was collusive and therefore invalid, and that a fraud was committed on the Nevada court. His testimony was in substance that he made a bargain with complainant to turn over the property to her in consideration of her agreement to go to Nevada for a divorce, and that she went there not to establish a permanent home but only to get a divorce and return to Jamestown. The complainant testified that she had no direct dealings with respondent in regard to the property settlement and she denied making any such bargain. Although she admitted that before she moved to Nevada she had received respondent's agreement to support her and also the deed, she stated that she was intending to get a divorce from him in any case at that time and that she did not go to Nevada as a result of any negotiations with respondent.

On the basis of the record before him the trial justice

entered a decree granting substantially all of the relief prayed for. The decree contained specific findings that the September 29, 1953 agreement was valid and binding; that there was no collusion in the execution thereof; and that it should be specifically enforced in equity proceedings by the courts of this state. After setting forth the provisions of the Nevada decree and observing that both parties were represented by counsel at such hearing, the decree in the case at bar contains express findings that there was no collusion between the parties in obtaining the Nevada decree and that such decree had been duly entered by a court of competent jurisdiction and was entitled to full faith and credit in this state. The decree also contained a finding that respondent was in arrears in the sum of $1,255.21 as of the end of March 1957.

After making such findings the trial justice ordered respondent to carry out the specific provisions of both the agreement and the Nevada decree. The respondent was directed to pay complainant the amounts owed to the end of March 1957 and he was also expressly ordered to pay her thereafter one half of his income from the trust estate as and when he received the same until her remarriage or death. Finally the decree ordered him to authorize the trustee of the estate in question to give complainant an account at her request of any moneys which respondent had received or might receive in the future as one of the beneficiaries of the trust estate.

The respondent's appeal from such decree is based upon the grounds that it is against the law and the evidence and the weight thereof; that it fails to do substantial justice between the parties; and that the trial justice misconceived the evidence. In his brief and in the oral arguments before us he raised three main issues. His first contention is that the September 29, 1953 agreement was a bargain for a divorce not obtainable in this state and was therefore a collusive agreement.

It may be pertinent to point out here that there is nothing in the evidence to show whether the complainant ever contemplated instituting divorce proceedings in Rhode Island or whether she had sufficient grounds to obtain a divorce in this state. The respondent's claim of collusion in the execution of said agreement rests on the theory that complainant's return to Rhode Island, after having lived in Nevada less than three months, is proof of her lack of a bona fide intention to make Nevada her legal domicile. Therefore respondent argues that she committed a fraud on the Nevada court and that the agreement played a part in the perpetration of such fraud and was consequently collusive and invalid.

We do not agree with respondent's contention. The question of whether complainant had established a legal domicile in Nevada is one of fact. *Fosdick* v. *Fosdick*, 15 R. I. 130. As was said in *McCarthy* v. *McCarthy*, 45 R. I. 367, at page 369: "To establish a domicile and become a domiciled inhabitant there must be an actual abode in the state with the intention in good faith to live here permanently and without any *present* intention of changing the home in the future. Actual residence without such intention does not suffice. In the absence of constitutional or statutory requirement in regard to domicile the length of the residence is immaterial provided the other elements are found to exist." (italics ours) It is undisputed that complainant actually lived in the state of Nevada for the length of time required by the laws of that state to establish a legal domicile for jurisdictional purposes in divorce actions. What was in her mind when she moved to Nevada and whether it was her intention to make her home there permanently or just to stay long enough to get a divorce and return to Jamestown are facts which in reality were known only to her. Nevertheless complainant's intention was a question of fact which had to be proven as an essential element in

434

establishing a legal domicile. *McCarthy* v. *McCarthy, supra,* at page 370.

The complainant denied that she entered into a bargain with respondent to have him turn over the property to her in consideration of her going to Nevada to get a divorce. As hereinbefore stated she testified further that she was intending to get a divorce from him in any case at that time. It is clear to us that the evidence on this issue was conflicting. The trial justice made express findings that there was no collusion in the execution of the agreement and that no fraud had been committed on the Nevada court. As we have already stated, complainant actually resided in the state of Nevada for the length of time required by the laws of that state to establish a legal domicile. The fact that she gave up her residence after having lived there only two and a half or three months is not proof of a lack of intention to make that state her legal domicile. It is obvious that on this question the trial justice believed complainant's testimony that she went to that state to get a divorce and to live there. It is equally obvious that he did not believe respondent's testimony that she went there solely as a result of a collusive bargain for a divorce.

There is nothing in the record to show that such findings are clearly erroneous or that they fail to do justice between the parties. Therefore they should not be disturbed. *Girard* v. *Sorel,* 85 R. I. 43, 125 A.2d 212. Agreements in settlement of property rights and alimony are not in their nature void as being contrary to public policy if they are fair and not designed to influence improperly the conduct of the parties in the proceedings for divorce or to mislead the court. *Phillips* v. *Phillips,* 39 R. I. 92, 100; *Brown* v. *Brown,* 48 R. I. 420, 424. In our opinion the trial justice's finding that said agreement was valid and binding was not erroneous.

The respondent next contends that the Nevada decree is not entitled to full faith and credit in Rhode Island. He argues that such decree can be collaterally attacked in this state on two grounds. One of his grounds is that a fraud was committed on the Nevada court. We have already approved the finding of the trial justice that no fraud had been committed. The respondent's other ground is that the provisions of general laws 1956, §15-6-3 (public laws 1949, chapter 2268, sec. 2), which deal with the question of prima facie evidence of continued domicile in this state, apply to the facts of this case. The provisions on which respondent rests his claim that complainant failed to prove a legal domicile in Nevada are the following:

> "Proof that a person obtaining a divorce from the bonds of matrimony in another jurisdiction (a) was domiciled in this state within twelve (12) months prior to the commencement of the proceeding therefor, and resumed residence in this state within eighteen (18) months after the date of his departure therefrom, or (b) at all times after his departure from this state and until his return maintained a place of residence within this state shall be prima facie evidence that the person was domiciled in this state when the divorce proceeding was commenced."

On the record before us we deem it unnecessary to determine whether §3 applies only to *ex parte* divorce proceedings in another state between parties resident in this state as provided in §15-6-2. Assuming without deciding that §3 applies to the facts in the case at bar, the most that can be said for respondent's theory is that there was prima facie evidence that complainant was domiciled in this state when the divorce proceeding in Nevada was commenced. In such circumstances complainant had the burden of presenting sufficient evidence to rebut the prima facie evidence of continued domicile in this state.

The uncontradicted evidence is that respondent was represented by his own counsel in the Nevada court. Jurisdic-

tion was a question of fact. Since there is nothing in the record to show that the Nevada court was not a court of competent jurisdiction, it is fundamental law that said court had jurisdiction to determine the questions of fact upon which the issue of jurisdiction depended. *Paine* v. *Paine*, 43 R. I. 478, 481. On such issue the Nevada court decided, after a full hearing, that complainant was a domiciled inhabitant of that state and had been so domiciled for the length of time required by the laws of Nevada to give the court jurisdiction. The respondent did not appeal from such decree. In fact in reliance thereon he remarried within approximately one month after the entry of the Nevada decree.

Since we have assumed for the purposes of this opinion that §3 is applicable, we cannot give effect to a presumption which would, in the absence of §3, operate in favor of complainant, namely, that a judgment presumes jurisdiction over the subject matter and over the persons. See *Cook* v. *Cook*, 342 U. S. 126, 128. Nevertheless it is our opinion that the findings of the trial justice that there was no evidence of fraud upon the Nevada court and that the evidence in the case at bar refuted the prima facie evidence in favor of respondent, if §3 applied, were not clearly wrong. On the basis of these findings and the further finding that respondent was represented by his own attorney, the trial justice decided that the Nevada decree was entitled to full faith and credit in this state under section 1, article IV, of the federal constitution. In our opinion such ruling was not erroneous.

There is nothing in the instant record to indicate that the proceedings in the Nevada court prior to the entry of the final decree of divorce were in any way inconsistent with the requirements of procedural due process. The respondent was afforded his day in court with respect to every issue involved in the litigation, including the jurisdictional issue of complainant's domicile. In such circumstances

there is nothing in the concept of due process which demands that he be afforded a second opportunity to litigate that issue. In the absence of evidence that the Nevada decree is invalid under the laws of that state or that it could be attacked collaterally therein on jurisdictional grounds, it is our opinion that the present case is governed by the rules of law laid down in *Sherrer* v. *Sherrer,* 334 U. S. 343, *Coe* v. *Coe,* 334 U. S. 378, *Cook* v. *Cook,* 342 U. S. 126, and *Sutton* v. *Leib,* 342 U. S. 402.

Therefore it is our opinion that in the absence of fraud or collusion, the requirements of full faith and credit under the federal constitution bar a respondent from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister state where there has been participation by respondent in the divorce proceedings, where he has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not subject to such collateral attack in the courts of the state which entered said decree. *Ramsay* v. *Ramsay,* 79 R. I. 441; *Hewett* v. *Hewett,* 44 R. I. 308.

The respondent's final contention is that even if the Nevada decree is entitled to full faith and credit in this state, complainant should seek relief in a court of law and not in equity. The complainant could undoubtedly have sought equitable relief for an accounting of the moneys due her under the September 29, 1953 agreement, since there was no adequate remedy at law by means of which she could find out how much she was entitled to under such agreement. Had she proceeded on that theory, equity would have had the power to order specific performance of the agreement by respondent. But, in the absence of express legislation, there is a split of authority on the question whether courts of equity should by specific performance enforce foreign decrees in so far as installments ordered to be paid in the future are concerned. However, in this instance we are of the opinion that the trial justice did not

**438**

err in decreeing specific performance of the Nevada decree inasmuch as said decree incorporated therein a formal property settlement which had been previously agreed to between the parties.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

ANDREWS, J., did not participate in the decision.

*Kirshenbaum & Kirshenbaum, Max Levin,* for complainant.

*M. James Vieira,* for respondent.