382 A.2d 810.

STACIA BOUCHARD *vs.* CHARLES E. BOUCHARD.

JANUARY 30, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J.    Charles E. Bouchard brought this petition for

certiorari (M.P. No. 77-184) to review a decree of the Family Court entered on April 22, 1977, in a proceeding commenced in that court by his wife, Stacia Bouchard, entitled Stacia Bouchard v. Charles E. Bouchard and docketed as petition FC No. 2252-EK. Charles E. Bouchard also filed an appeal (Appeal No. 77-179) in this court from that decree entered in Family Court. We ordered the writ to issue and pursuant thereto, the pertinent records have been certified to this court. We ordered the matters consolidated for hearing before us.

The record indicates that petitioner, hereinafter Charles, and respondent, hereinafter Stacia, were married in August 1945, in Providence. Stacia filed a petition for a divorce *a mensa et thoro* (bed and board divorce) in 1965. The petition was denied and dismissed by a Family Court order entered on September 7, 1965. That dismissal was affirmed by this court on appeal.[1] Stacia then filed a second petition for a bed and board divorce in July 6, 1967. There was no final decree entered, but on March 29, 1968, after a hearing, a Family Court justice entered a decree in which he, inter alia, ordered Charles to make payment of $140 weekly for the support of Stacia and the two minor children of the marriage, Robert, then aged 19, and Joan, then aged 18.

Charles made the payments as ordered and neither party took any further action until 1975. On March 25, 1975, Charles filed a petition for divorce *a vincula* in a Florida Circuit Court asserting that he had been a Florida resident for six months and that the marriage was irretrievably broken.[2]

Stacia entered a general appearance in the proceeding through a Florida attorney and on May 1, 1975, filed a response to Charles' petition in which she admitted that the

---

[1]*Bouchard v. Bouchard,* 102 R.I. 290, 229 A.2d 850 (1967).

[2]An allegation that the marriage is irretrievably broken is a ground for divorce under Florida law.

children were emancipated and that the marriage was irretrievably broken. Stacia requested the Florida court to take jurisdiction of the subject matter and of the parties, to award her temporary and permanent alimony and attorney's fees, and to make an adjudication of the property rights of the parties. Stacia has never challenged the fact of Charles' Florida domicile.

In June 1975, Stacia's Florida attorney utilized discovery procedures including extensive interrogatories and a motion to produce documents to ascertain Charles' financial status. On June 23, 1975, Stacia filed a motion in the Rhode Island Family Court to temporarily and permanently enjoin Charles from maintaining divorce proceedings and from adjudicating property rights in any jurisdiction other than Rhode Island. A Family Court justice granted an ex parte restraining order as requested by Stacia but vacated the order three days later.

On June 26, 1975, Stacia filed a motion to transfer in the Florida court, requesting that court to relinquish jurisdiction to the Rhode Island Family Court. She also asserted that the Florida court had no jurisdiction over the real and personal property of the parties. That motion to transfer was denied by the Florida court, and the divorce was then heard on the merits with Stacia not appearing personally but represented by counsel.

On July 1, 1975, the Florida court issued a final judgment dissolving the marriage and denying Stacia all alimony, attorney's fees, adjudication of property rights and general relief.

On July 14, 1975, Stacia filed a motion in the Florida court requesting that the final judgment be amended because of the pending Rhode Island Family Court action or if that motion was denied, in the alternative, to grant a rehearing on the issue of alimony and attorney's fees. These motions were denied by the Florida court on August 11, 1975.

On July 15, 1975, Charles filed a motion in the Rhode Island Family Court to dismiss all pending motions and decrees alleging that under the Full Faith and Credit clause of the United States Constitution, art. IV, §1, and the doctrine of res judicata, the Florida divorce decree precluded Stacia from obtaining any relief in the Rhode Island Family Court.

On August 15, 1975, Stacia filed a motion seeking to hold Charles in contempt for failing to make support payments due after June 26, 1975, in accordance with the Family Court decree of March 29, 1968. Although a hearing was held on the parties' motions, no decision was filed until April 14, 1977.[3] Meanwhile, on September 8, 1975, Stacia filed an appeal from the Florida final judgment dissolving the marriage in the District Court of Appeals in Florida. The appeal was dismissed by that court on March 25, 1976.

On April 22, 1977, a decree was entered in which the Family Court justice denied Charles' motion to dismiss, held that the decree of March 29, 1968 was still in effect notwithstanding the Florida final judgment of divorce, and adjudged Charles in contempt for failure to pay $980 due under the decree from June 26, 1975 to August 15, 1975. Charles was ordered to pay said amount by June 3, 1977, in order to purge himself of contempt.

On April 28, 1977, Stacia filed a motion in Family Court alleging that Charles was in arrears in the amount of $12,460 for support payments allegedly due between August 15, 1975 and April 19, 1977, and requesting that he be held in contempt. No hearing has been held on this motion.

On May 27, 1977, Charles filed his petition for certiorari in this court. We ordered the writ to issue and stayed all proceedings pending our further order.

---

[3]No explanation for the delay appears in the record.

Charles contends that the Florida court had *in rem* jurisdiction over the divorce action and *in personam* jurisdiction over the parties since he had satisfied the requirements for Florida domicile and Stacia had made a general appearance through her counsel and actively participated in the Florida divorce proceedings.[4] The question to be decided in this case is whether or not the Full Faith and Credit clause of the United States Constitution precludes the courts of this state from entertaining a collateral attack on a judgment of divorce rendered in the state of Florida when the validity of such judgment could not be challenged in the courts of that state.

Charles argues that under the Full Faith and Credit clause of the United States Constitution, Rhode Island must honor the terms of the Florida divorce decree. He alleges that since the Florida decree expressly denied Stacia alimony, her right to support payments under the prior Rhode Island decree in the bed and board action had been terminated by reason of the final judgment in the Florida proceeding. He contends that the trial justice committed error when he found that the support payments ordered in the decree entered in the bed and board proceeding in Rhode Island survived the Florida divorce judgment and when he found Charles in contempt for his failure to make those payments. He contends that the trial justice committed further error when he denied his motion to dismiss the bed and board petition pending in the Family Court.

Stacia argues that while the Florida court had jurisdiction to grant the divorce, it did not have jurisdiction to ter-

---

[4]The petitioner directs our attention to the following cases: *Nowell* v. *Nowell*, 157 Conn. 470, 254 A.2d 889, *cert. denied*, 396 U.S. 844, 90 S. Ct. 68, 24 L. Ed. 2d 94 (1969); *Yates* v. *Yates*, 155 Conn. 544, 235 A.2d 656 (1967); *Smith* v. *Smith*, 151 Conn. 292, 197 A.2d 65 (1964); *Johnson* v. *Johnson*, 202 Md. 547, 97 A.2d 330, *cert. denied*, 346 U.S. 874, 74 S. Ct. 126, 98 L. Ed. 382 (1953); *Isserman* v. *Isserman*, 11 N.J. 106, 93 A.2d 571 (1952); *Lynn* v. *Lynn*, 302 N.Y. 193, 97 N.E.2d 748, 82 N.Y.S.2d 397, *cert. denied*, 342 U.S. 849, 72 S. Ct. 72, 96 L. Ed. 640, (1951).

minate the Family Court support order by denying her alimony. She asserts that the divisible divorce doctrine should apply here since, as she argues, she did not "appear personally" in the Florida proceedings or "actively participate" therein.

The 1968 Family Court decree ordered "support" for the wife and the two minor children. The Florida divorce denied "all alimony" to the wife. The Family Court justice held that since there was no provision for "support" in the Florida judgment, the decision of the Florida court should be considered as a non-suit rather than a final judgment. In *Rymanowski* v. *Rymanowski*, 105 R.I. 89, 100-01, 249 A.2d 407, 413 (1969), we said "it makes little difference whether petitioner's claim is designated as one for 'support' or 'alimony.' " The fact that different courts use different nomenclature is of no legal significance.

The 1968 decree combined child support and wife support into single payments. The Florida judgment denied alimony to the wife but was silent as to child support. The Family Court trial justice's decision holding Charles in contempt appears to hold that Charles is still liable for support for both children and wife under the 1968 Family Court decree. For the reasons that follow, we determine that such a holding was erroneous.

### Child Support

In 1975, the children originally subjected to the support order were 25 and 26 years of age respectively, and according to the response filed by Stacia in the Florida proceedings, were emancipated.

The established rule is that a husband's responsibility for the support of his children ends at the age of majority absent some exceptionl circumstances or express agreement between the parties to the contrary. *Tuttle* v. *Tuttle*, 86 R.I. 421, 135 A.2d 841 (1975). *See* 1 A.L.R. 2d 910 (1948).

The 1968 Family Court decree ordering child support and

alimony was not self-terminating but was valid and effective until amended or terminated by an order of the court. *Ciallella* v. *Ciallella*, 81 R.I. 320, 103 A.2d 77 (1954).

Since Charles, on July 15, 1975, had filed a motion to dismiss the 1968 decree, his liability for the support of the children, who had long since reached their majority and had been emancipated, should have been terminated by the granting of his motion. The Family Court justice was therefore clearly wrong in finding Charles in contempt for failure to make support payments for the benefit of the children.

### Wife Support or Alimony

The Florida court found that Charles was domiciled in that state and that it had valid *in personam* jurisdiction of him. The Florida court also found that it had *in personam* jurisdiction over Stacia. This finding is disputed by Stacia who alleges that since she did not personally appear and *actively participate*, the Florida court lacked jurisdiction over her. This argument has little merit.

It is generally held that, absent fraud, a general appearance through an authorized attorney is sufficient to create valid *in personam* jurisdiction. 27B C.J.S. *Divorce* §343 at 814 (1959); Clark, *Law of Domestic Relations* §11.2 at 292 (1968); *see Johnson* v. *Muelberger*, 340 U.S. 581, 71 S. Ct. 474, 95 L. Ed. 552 (1951). The contention by Stacia that she did not *actively participate* in the Florida proceeding is belied by the fact of her response to the divorce petition and her filing of voluminous interrogatories seeking to determine petitioner's financial status. Stacia's contention that the pendency of the Rhode Island bed and board divorce was a bar to the institution of the divorce action in Florida is also without merit. *See* 3 Nelson, *Divorce and Annulment* §33.04 at 429 (2d ed. 1945). In addition, it is generally held that where the parties are subject to the personal jurisdiction of a foreign court, a decree denying the wife alimony terminates and supersedes the support provisions of a prior decree for support pendente lite or a bed and board divorce.

3 Nelson, *supra* §33.40 at 512; Clark, *supra* § 14.4 at 439; *Lynn* v. *Lynn, supra.* This is mandated by the Full Faith and Credit clause of the United States Constitution, art. IV, §1; *see* 28 U.S.C. §1738 (1970), 49 A.L.R. 3d 1276, 1277 (1973).

If the denial of alimony under the Florida judgment is final, we must uphold the validity of that judgment under the Full Faith and Credit clause of the United States Constitution.

When the questioned judgment is based on valid *in rem* jurisdiction over the subject matter and *in personam* jurisdiction over the parties, the other states must enforce that judgment to the extent that it is final and non-modifiable. *Sistare* v. *Sistare,* 218 U.S. 1, 30 S. Ct. 682, 54 L. Ed. 905 (1910); 3 Nelson, *supra* §33.46 at 525.

There is nothing in the record before us to indicate that the proceedings in the Florida court prior to the entry of the final judgment of divorce and denial of alimony for Stacia were inconsistent with the requirements of procedural due process. Stacia was afforded her day in court with respect to every issue involved, including the jurisdictional issue of domicile and the denial of alimony. She filed a general appearance, admitted jurisdiction in her answer and, in fact, requested the Florida court to award temporary and permanent alimony. She further participated by filing voluminous interrogatories to determine Charles' financial status. She was given a full opportunity to contest the alimony issue in the Florida court, including an appeal to the trial court's decision which was denied.

To the extent that Stacia's attempts to reinstate the Family Court's support order are viewed as jurisdictional attacks on the power of the Florida court to decide alimony or are viewed as an attempt to relitigate the alimony issue, such attempts are collateral attacks on the Florida judgment and, in the absence of evidence in the record that the Florida

decree was invalid or could be collaterally attacked in Florida, are barred by article IV, section 1, of the United States Constitution. *Sherrer* v. *Sherrer*, 334 U.S. 343, 68 S. Ct. 1087, 92 L. Ed. 1429 (1948); *Nevin* v. *Nevin*, 88 R.I. 426, 149 A.2d 722 (1959); *Ramsay* v. *Ramsay*, 79 R.I. 441, 90 A.2d 433 (1952).

Clearly, therefore, the trial justice misapplied the law and was clearly wrong in finding that the Florida judgment did not terminate the 1968 Family Court support payments and that Charles was in contempt for failing to make alimony payments for the benefit of Stacia.

Charles contends that in any event, since Stacia failed to bring any action on the temporary orders from 1968 to 1975, that she was guilty of laches and, therefore, should be precluded from proceeding against him. There is nothing in the record indicating any unexplained or inexcusable delay by Stacia, nor has Charles directed our attention to any resulting prejudice to himself by Stacia's actions. The claim of laches is therefore without merit. *See Pukas* v. *Pukas*, 104 R.I. 542, 247 A.2d 427 (1968).

Appeal No. 77-179 is dismissed pro forma. The petition for certiorari (M.P. No. 77-184) is granted, the decree entered on April 22, 1977 is quashed, and the papers are ordered returned to the Family Court with our decision endorsed thereon.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

*Max Levin,* for plaintiff-respondent.

*Aisenberg & Dworkin, Alan T. Dworkin,* for defendant-petitioner.