**Arthur J. DeBLOIS, Jr., et al.**

v.

**R. Gary CLARK, in his capacity as Tax Administrator.**

**No. 98–336–M.P.**

Supreme Court of Rhode Island.

Jan. 19, 2001.

Lauren E. Jones, Andrew M. Gilstein, Shawn R. Donahue, Providence, for Plaintiff.

James Cambio, Marcia McGair Ippolito, Bernard J. Lemos, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

Lederberg, Justice.

The petitioners, Arthur and Eleanor De-Blois, like many Rhode Islanders in search of a warmer climate during the winter months, began spending significant time in Florida after retirement. After they filed nonresident income tax returns for the years 1991, 1992 and 1993, years for which they claimed to be Florida domiciliaries, the Division of Taxation (tax division or respondent) took the position that the petitioners were Rhode Island domiciliaries and assessed resident income taxes for those years. The signal issue in this case is whether, for state income tax purposes, domicile must be established by clear and convincing evidence or by a preponderance of the evidence. It is our conclusion that domicile is established by a preponderance of the evidence pursuant to the unambiguous burden of proof established by G.L. 1956 § 8–8–28, and we conclude that the

petitioners were Florida domiciliaries during the years in question.

### Facts and Procedural History

In 1986, after their children were grown and settled, petitioners sold their family home in Pawtucket, Rhode Island, and purchased a waterfront condominium in Warren. In 1988, Arthur DeBlois stepped down as chief executive officer of DeBlois Oil, the family business at which he had worked for more than forty years before retiring two years later on December 30, 1990. Also in 1988, the petitioners purchased a condominium in Vero Beach, Florida, a community they had begun visiting in 1983, and in 1993, they bought a new condominium in Vero Beach. The parties have stipulated that during the tax years in question, 1991 to 1993, petitioners generally spent the months of January through early May and mid-October through late November in Florida, and spent the months of May through early October, along with Thanksgiving through the Christmas season, in Rhode Island. During their Rhode Island stays, petitioners resided at their condominium in Warren, which their children—who were not Rhode Island residents—used as a waterfront "getaway" when their parents were in Florida.

The petitioners filed nonresident Rhode Island income tax returns for tax years 1991, 1992, and 1993. The tax division mailed three "Notice[s] of R.I. Income Tax Due" to petitioners in 1994, one for each of the tax years 1991 to 1993. Each notice stated that the balance was "payable" and "due" ten days from the date of the notice. In total, the tax division sought $59,720.58 in taxes and $15,155.18 in interest and penalties, for a total of $74,875.76. This assessment was based on the tax division's position that petitioners were residents of Rhode Island, not Florida, for the tax years 1991 to 1993, and therefore they should have filed Rhode Island resident

income tax statements for the years in question.[1]

The petitioners sought review of the alleged tax liability by the tax administrator and challenged the determination that they were Rhode Island residents. After a hearing on the 1993 and 1992 tax years and a review based on stipulated facts pertaining to the 1991 tax year, the administrative hearing officer ruled against petitioners. The tax administrator affirmed the hearing officer's decision, and petitioners appealed to the District Court pursuant to § 8–8–24. The claims for the three tax years were consolidated.

The District Court addressed the issues of whether petitioners were domiciliaries of Rhode Island or Florida and whether the notices sent to petitioners were statutorily and constitutionally adequate. After a hearing on March 16, 1998, the District Court judge issued a decision in favor of the tax administrator, and on the basis of their contacts with Rhode Island, found that petitioners were domiciliaries of Rhode Island. In making this determination, the District Court judge stated that "the party seeking to establish a change in domicile, here Mr. and Mrs. DeBlois, must do so by *clear and convincing evidence*,"

(emphasis added), citing as support *Margani v. Sanders*, 453 A.2d 501, 503 (Me. 1982), and *Kartiganer v. Koenig*, 194 A.D.2d 879, 599 N.Y.S.2d 312, 314 (1993). The District Court judge also held that any defects in the tax-due notices were *de minimis*. The petitioners filed a petition for certiorari, and this Court issued the writ.

### Standard of Review

■■■ Our review on certiorari is limited to questions of law. *Hometown Properties, Inc. v. Rhode Island Department of Environmental Management*, 592 A.2d 841, 843 (R.I.1991). " 'We do not weigh the evidence presented * * * but rather [we] inspect the record to determine if any legally competent evidence exists therein to support the findings made by the trial justice.' " *Gregson v. Packings & Insulations Corp.*, 708 A.2d 533, 535 (R.I.1998).

### Burden of Proof

■■■ The determination of the proper burden of proof by which domicile must be proven in a tax case is governed by § 8–8–28, entitled "Burden of proof in tax cases." [2] The statute states:

1. General Laws 1956 § 44–30–5(a) defines *"resident individual"* for income tax purposes as an individual:

   "(1) Who is domiciled in this state; * * *
   "(2) Who is not domiciled in this state but maintains a permanent place of abode in this state and is in this state for an aggregate of more than one hundred eighty-three (183) days of the taxable year * * *."

   The parties stipulated that petitioners were not in Rhode Island more than 183 days in any of the tax years in question. Therefore, the imposition of Rhode Island resident income taxes would require a finding that petitioners were Rhode Island domiciliaries during 1991 to 1993.

   The tax division also alleged that petitioners, whether or not they are Rhode Island domiciliaries, are subject to Rhode Island income tax pursuant to a "Source Income" theory under § 44–30–32. The District Court judge's decision, which we review at this time, did not appear to address the source income theory but determined solely the issue of domicile. The tax division requested that

in the event this Court concluded that petitioners are not domiciliaries of Rhode Island, the case be remanded "to the District Court for a determination of Rhode Island source income." Because this issue was not developed by the parties, we decline to address it, without prejudice to the tax administrator raising the issue upon appropriate motion in the District Court upon the remand of this case.

2. We discussed "burden of proof" in civil cases generally in *Murphy v. O'Neill*, 454 A.2d 248 (R.I.1983):

   "[T]he term 'burden of proof' embraces two different concepts. The first concept, which is often alluded to as the *'burden of persuasion,'* refers to the litigants' burden of establishing the truth of a given proposition in a case by such quantum of evidence as the law may require. The *burden of persuasion never shifts*. The second concept refers to the *'burden of going forward' with the evidence*, which *shifts from party to party* as the case progresses." *Id.* at 250 (citing

"**Burden of proof in tax cases.**—In all tax cases before the court, and upon appeal therefrom, a *preponderance of the evidence shall suffice to sustain the burden of proof.* The burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation. In any proceedings in which the division of taxation alleges fraud or an exception to the normal statute of limitations on assessment, the burden of proof in respect of that issue shall be upon the division of taxation. To be sustained *on the issue of fraud,* the *division of taxation must sustain a burden of clear and convincing proof.*" (Emphases added.)

In interpreting a legislative enactment, we must determine and effectuate the Legislature's intent and attribute to the statute the meaning most consistent with its policies or obvious purposes. *Dias v. Cinquegrana,* 727 A.2d 198, 199–200 (R.I. 1999). Section 8–8–28 clearly directs that the quantum of evidence sufficient to sustain the burden of proof in factual issues in tax cases is a preponderance of the evidence. Thus, petitioners needed only to demonstrate a change of domicile to Florida by a preponderance of the evidence, not by clear and convincing evidence.

█ The tax division argued that the second sentence of § 8–8–28, which states that "[t]he burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation,"

should be interpreted to mean that "once issues have been joined and some evidence presented thereon, *the burdens of both production and persuasion* on specific issues *can shift and vary* as a tax appeal progresses." (Emphases added.) In *Dart Industries, Inc. v. Clark,* 696 A.2d 306, 310 (R.I.1997), we interpreted the clause "[t]he burden of proof shall fall upon the party seeking affirmative relief" in § 8–8–28 to mean that both the burden of production and persuasion fall on the party seeking affirmative relief. In § 8–8–28, the phrase "shall shift as in other civil litigation" modifies "the burden of going forward with the evidence"—that is, the burden of production—*not* the burden of proof.[3] Hence, the intent of the Legislature in stating that the "burden of going forward with the evidence shall shift as in other civil litigation" merely codifies that in tax cases, the burden of production shifts as it does in civil cases generally, but the burden of persuasion or burden of proof on factual issues does not vary from issue to issue.

The respondent cited *Seibert v. Clark,* 619 A.2d 1108 (R.I.1993) to support its proposition that a standard of proof other than a preponderance of the evidence may be applied to the issue of domicile in a tax case. In *Seibert* we held that "[t]he burden falls on [the taxpayer] to prove that the decal fee was unconstitutional *beyond a reasonable doubt.*" *Id.* at 1113.[4] (Emphasis added.) *Seibert,* however, challenged the constitutionality of a tax statute

---

*Giblin v. Dudley Hardware Co.,* 44 R.I. 371, 375, 117 A. 418, 419 (1922)). (Emphases added.)

3. "Burden of production" and "burden of going forward with the evidence" are synonyms. *See generally,* 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5122 (1977); *State v. Gabriau,* 696 A.2d 290, 295 (R.I.1997) (quoting *State v. Neary,* 122 R.I. 506, 511–12, 409 A.2d 551, 555 (1979)); *State v. Ranieri,* 560 A.2d 350, 352 (R.I.1989).

4. The proof beyond a reasonable doubt standard for challenges to the constitutionality of

a statute under the United States Constitution was stated by Justice Washington in *Ogden v. Saunders,* 25 U.S. (12 Wheat.) 213, 270, 6 L.Ed. 606, 625 (1827). This standard has long been recognized by this Court as appropriate in constitutional challenges to state statutes. *See, e.g., Seibert v. Clark,* 619 A.2d 1108, 1113 (R.I.1993) (citing *Cardi Corp. v. State,* 524 A.2d 1092, 1097 (R.I.1987) and others); *State v. The District of Narragansett,* 16 R.I. 424, 440, 16 A. 901, 906 (1889) (quoting *Ogden,* 25 U.S. (12 Wheat.) at 270, 6 L.Ed. at 625).

under the Commerce Clause and the Privileges and Immunities Clause of the United States Constitution; unlike this case, it did not address the burden of proof for establishing the domicile of a resident.

In cases of fraud, however, § 8–8–28 directs that "the division of taxation must sustain a burden of clear and convincing proof." We interpret the specification that fraud be proven by clear and convincing evidence as supporting our conclusion that the Legislature intended that a preponderance of the evidence will suffice in determining all other factual issues in a tax case. Consequently, we hold that the trial judge erred by failing to adopt the preponderance of the evidence standard required by § 8–8–28.

## Resolution

In this case, the evidence before the District Court consisted in relevant part of a list of stipulated exhibits and petitioners' trial testimony that primarily discussed their contacts and activities in Florida and Rhode Island during the relevant period.[5] The petitioners' testimony on these issues was uncontroverted. Because the issues and facts in this case have been fully developed by the parties, a remand would not provide additional information necessary for our decision. *See Easton's Point Association, Inc. v. Coastal Resources Management Council,* 559 A.2d 633, 636 (R.I.1989) (holding that because "the facts and issues have been fully developed and clarified, further remand would not provide decisive new information"). Therefore, we proceed to decide the domicile of the petitioners.

This case can be resolved by applying § 8–8–28 to uncontradicted facts, and hence, we face purely a question of law properly reviewable by this Court on certiorari. *Fleet National Bank v. Clark,* 714 A.2d 1172, 1176 (R.I.1998); *Dart Industries, Inc.,* 696 A.2d at 309; *Flather v. Norberg,* 119 R.I. 276, 280 n. 2, 377 A.2d

225, 227 n. 2 (1977) (citing *Lemoine v. Department of Mental Health, Retardation & Hosps.,* 113 R.I. 285, 288, 320 A.2d 611, 613 (1974)).

## Determination of Domicile

We begin by reviewing the decisions of the tribunals that addressed the issue of domicile. The administrative hearing officer, in an August 2, 1996 decision on tax years 1992 and 1993, reasoned that "[t]he taxpayers have friends, family and business relationships in Rhode Island. Those relationships are not gradually being severed. They are (understandably) continuing and rich. * * * The taxpayers have not relocated a business in Florida. They do not remain in Florida on important family occasions." In the October 6, 1997 decision on the 1991 tax year, the administrative hearing officer wrote, "The taxpayers have lived in Rhode Island for many years. Their business connections to Rhode Island are still substantial, and their intent to return is evidenced by the fact that they do return to Rhode Island every year ." In response to both of these rulings by the hearing officer, the tax administrator issued two brief decisions in which he "approve[d], adopt[ed] and incorporate[d] * * * the findings of fact and conclusions of law as made by the hearing officer." The District Court judge "affirmed and upheld" "the decision of the Tax Administrator," reasoning, in part, that "[w]hile the [c]ourt finds that these petitioners tried mightily to break their ties to this state to the extent that they would not be subject to taxation as a resident, the court finds they simply did not do enough to succeed in their attempt." Moreover, he wrote,

"Arthur DeBlois investigated the tax advantages of becoming a Florida domiciliary and with the advice of a tax expert, he deliberately sought to sever a sufficient number of his ties with the State of Rhode Island so as to avoid the substan-

---

5. The trial testimony of Michael F. Canole, chief revenue agent for the tax division, discussed source income. As noted *ante,* the issue is not addressed in this opinion.

tially higher income tax rate for Rhode Island residents.

"The issue before this Court for decision was whether the steps DeBlois and his wife took in this regard were sufficient to accomplish this end.

"In sum, while Mr. and Mrs. DeBlois have established other contacts outside of Rhode Island, the court believes their most enduring, most substantive, contacts remain here; and it is a telling fact that * * * they have picked their final resting place to be here in Rhode Island.* * *

"Unlike previous settlers who pulled up stakes, went west and established a new home in a new place and unlike those millions of immigrants, starting with the Pilgrims, who abandoned the old work and their old home for the new worlds and a new home, the court finds that Mr. and Mrs. DeBlois didn't ever truly abandon their old home in Rhode Island. * * * [T]hey did not and would not break their deep and compelling ties with this state." [6]

■■ We held in *Flather*, that in order to establish domicile, a person must have an "'actual [place of] abode in the state with the intention in good faith to live [t]here permanently and without any *present* intention of changing the home in the future.'" 119 R.I. at 281, 377 A.2d at 228 (quoting *Nevin v. Nevin*, 88 R.I. 426, 433, 149 A.2d 722, 725 (1959)). "Generally, the controlling factor in determining a person's domicile is whether he or she possesses the requisite domiciliary intent." *Id.* Because it is not disputed here that petitioners have an "actual place of abode" in Florida, the only issue is whether they possess the requisite domiciliary intent.

■ This Court has most explicitly addressed establishing a domicile in Rhode Island in the case of *McCarthy v. McCar-*

*thy*, 45 R.I. 367, 369, 122 A. 529, 531 (1923):

"To establish a domicile and become a domiciled inhabitant there must be an actual abode in the state with the intention in good faith to live here permanently and without any present intention of changing the home in the future. Actual residence without such intention does not suffice. In the absence of constitutional or statutory requirement in regard to domicile the length of the residence is immaterial provided the other elements are found to exist."

The general concept of domicile has been defined as:

"[t]he permanent residence of a person or the place to which he intends to return even though he may actually reside elsewhere. A person may have more than one residence but only one domicile. * * * The established, fixed, permanent or ordinary dwelling place or place of residence of a person, as distinguished from his temporary and transient, though actual, place of residence. It is his legal residence, as distinguished from his temporary place of abode; or his home, as distinguished from a place to which business or pleasure may temporarily call him." Black's Law Dictionary 484–85 (6th ed.1990).

■ Applying these principles to this case, it is our opinion that an individual may retain contacts to Rhode Island, where he or she may spend significant time, but become domiciled in another state, provided the prerequisites of domicile are met. Moreover, a person may have more than one residence, Restatement (Second) *Conflict of Laws* § 20 cmt. *b* (2) (1971), and may even maintain a residence in the former domicile. *See* Restatement (Second) *Conflict of Laws* § 18 cmt. *e* (1971) ("It is * * * possible for a

---

**6.** The District Court judge also cited a list of factors apparently derived from *Flather v. Norberg*, 119 R.I. 276, 283, 377 A.2d 225, 229 (1977). In *Flather*, however, these factors were relevant to the determination of "permanent place of abode," a term formerly included in § 44–30–5(a)(1) and which we expressly held in *Flather* was not synonymous with domicile but was more akin to "residence." 119 R.I. at 283, 377 A.2d at 229.

person to retain his old dwelling place and to cease to regard it as his home. In that case, if he regards the new dwelling place as his home, his domicil changes to the new dwelling place"); *see also Rosenstiel v. Rosenstiel*, 368 F.Supp. 51, 58 (S.D.N.Y. 1973), *aff'd*, 503 F.2d 1397 (2d Cir.1974).[7] In order to effectuate a change of domicile, physical presence must concur with the intention of making the new location a permanent abode. *Margani v. Sanders*, 453 A.2d 501, 503 (Me.1982); *Lyon v. Glaser*, 60 N.J. 259, 288 A.2d 12, 14–15 (1972); Restatement (Second) *Conflict of Laws* § 15 cmt. *a* (1971). One need not abandon a former domicile—to the extent that means never or rarely returning—nor must one gradually sever or break ties to the state of origin.[8] Although choosing a final resting place may be considered, it should be considered very lightly, "because many sentimental reasons influence the selection of burial places for our dead, having little reference to legal domicile." *Cooper's Adm'r v. Commonwealth*, 121 Va. 338, 93 S.E. 680, 683 (1917). Finally, a tax avoidance motive for changing one's domicile is permissible. Restatement (Second) *Conflict of Laws* § 18 cmt. *f* (1971) ("Provided that [the] requirements [of domicile] are met, it is immaterial what motives led the person to go there. It makes no difference * * * whether the move to the new location was for purposes of health, to accept a job, to avoid taxation, [or] to secure a divorce."); *but see* Restatement (Second) *Conflict of Laws* § 20 at 83 "Special Note on Evidence for the Establishment of a Domicil of Choice" ("A person's motive in going to a certain locality may be important evidence as to whether he intends to make his home there."). Although a motive to avoid taxes without additional evidence to establish domicile may militate against finding a change in domicile, a person may move to a new state for tax reasons *and* have a bona fide intention to establish domicile in that state.

The determination of domicile must be made on a case by case basis upon consideration of all the evidence. *McCarthy*, 45 R.I. at 370, 122 A. at 531; *Lyon*, 288 A.2d at 15. A person's intent with respect to domicile may be evidenced by his or her testimony and may—and often as a practical matter, must—also be evidenced by objective manifestations of that intent. *McCarthy*, 45 R.I. at 370, 122 A. at 531 ("Actions as well as declarations are to be weighed in the determination of the intention."). Here, evidence that petitioners intended to change their domicile to Florida was substantial. The petitioners' condominium furnishings in Florida were valued by an insurance company "in excess of $150,000," compared to "about $50,000" valuation of furnishings in Rhode Island. The Florida condominium also contains silverware, "the valuables [and] some paintings." It is more expensive than their condominium in Warren. They filed for and were granted a homestead

---

7. The Restatement (Second) *Conflict of Laws* § 20 cmt. *b* (2) (1971) provides guidance in determining domicile in cases in which two residences exist:

"Both dwelling places may be homes in the sense used in this Restatement, but one may be the person's principal home. In this case domicile is at the principal home. As between two homes, a person's principal home' is that to which he is more closely related or, stated in other words, that which is more nearly the center of his domestic, social and civil life. * * * Also significant are such factors as which home is the more spacious, which contains the bulk of the household furnishings, in which has he shown more interest, which home has a way of life, (country life, for example, as opposed to city life) more conducive to the person's tastes, and from which home does he engage more actively in social and civic affairs, as by voting, holding public office, attending church, belonging to local clubs and the like. The person's own feelings towards the dwelling place are of great importance."

8. Some cases required an intent to "abandon" a former domicile as a natural incident of a person's intention to acquire a new domicile, given that only one domicile is possible. *Blount v. Boston*, 351 Md. 360, 718 A.2d 1111, 1117 (1998); *Piche v. Department of Taxes*, 152 Vt. 229, 565 A.2d 1283, 1285 (1989).

exemption in Florida, the application for which asked for the "[d]ate you last became a permanent resident of Florida," to which petitioners responded "10/90."[9] The petitioners changed their drivers' licenses and car registrations to Florida and changed their wills to recite that they were "of Vero Beach, Florida." Mr. DeBlois made repeated references to Florida as his "permanent," "official," and "legal" home in resignation correspondence to various Rhode Island civic and business groups to which he had belonged.[10] The petitioners filed Florida "intangible tax returns" and paid the taxes thereon. They registered to vote in Florida and since 1991 have only voted there. *See Blount v. Boston*, 351 Md. 360, 718 A.2d 1111, 1115 (1998) ("Our cases have characterized the place of voting as 'the highest evidence of domicile.' ").

Moreover, petitioners have joined churches and country clubs in Florida and have made "substantially greater" donations to their church in Florida than their donations in Rhode Island after 1991. Mr. DeBlois has volunteered for a local Florida hospital, a battered women's shelter, Habi-

tat for Humanity, and has been active in politics in Florida. When he returns to Rhode Island for board meetings of De-Blois Oil, Mrs. DeBlois remains in Florida. For federal income tax purposes, the petitioners treated the 1993 sale of the Vero Beach condominium as a sale of a principal residence ("[T]he decision was that Florida was my home, and we treated the sale of the condominium that way."). Furthermore, all but one of their checking accounts are in Florida.[11] In addition to these objective manifestations of intent, when asked, "So, it's fair to say as of August 1, 1990, you had intended to change domiciles at that point?," Mr. De-blois responded "yes."[12] The aggregate of this evidence was sufficient to demonstrate that petitioners "in good faith inten[d] to live * * * [in Florida] permanently without any present intention of changing homes in the future."[13]

In summary, we conclude that the tax administrator placed impossible barriers against establishing a change in domicile. The petitioners here acted reasonably and took sufficient steps in attempting to

9. Fla.Stat.Ann. § 196.031 (West 1999) states: "Every person who, on January 1, has the legal title or beneficial title in equity to real property in this state and who resides thereon and in good faith makes the same his or her *permanent residence* * * * is entitled to an exemption from all taxation." (Emphasis added.) "Permanent residence" is defined as: "that place where a person has his or her true, fixed and permanent home and principal establishment to which, whenever absent, he or she has the intention of returning. A person may have only one permanent residence at a time * * *." Fla.Stat.Ann. § 196.012 (West 2001 Supp.).

10. *See* Restatement (Second) *Conflict of Laws* § 20 at 82 "Special Note on Evidence for Establishment of a Domicil of Choice" ("*Formal Declarations.* A person's declarations as to what he considers to be his home, residence or domicil are generally admissible as evidence of his attitude of mind. Such declarations are frequently contained in formal legal documents, [such] as wills, deeds and affidavits; they may also appear in letters, in hotel and automobile registrations.").

11. *See* Restatement (Second) *Conflict of Laws* § 20 at 82 "Special Note on Evidence for

Establishment of a Domicil of Choice" ("*Acts.* * * * [T]he location of a person's bank is some evidence as to the place of his domicil since, for the sake of convenience, he would presumably wish to deal with a bank close to his home.").

12. Mr. DeBlois also testified that he consulted with his attorney about changing his domicile: "I told him we were making the move to Florida. I wanted to be sure that the things that we did, and the way we did it, were in conformity with moving one's domicile, we were going somewhere else, and we discussed it."

13. Restatement (Second) *Conflict of Laws* § 18 cmt. *g* states, "where a person's significant contacts are closely divided between two or more states * * * the person's desires as to the location of his domicil may be permitted to tip the scales in favor of one state or the other." Thus, even in a case where the contacts were in equipoise, expressions of intent such as those of petitioners could "tip the scales" in favor of the person's desired domicile.

change their domicile. Moreover, it is our opinion that a change in domicile does not require abandonment of one's former state. Domicile is manifested by physical presence plus intent. Here, petitioners' actions demonstrated their intent to establish domicile in Florida.

Therefore, we hold as a matter of law that petitioners have established by a preponderance of the evidence that they intended that Florida be their "fixed, permanent [and] ordinary dwelling place," and thus their domicile, during the years in question.

### Validity of the Notices

█ The notices sent to petitioners were titled "Notice of R.I. Income Tax Due" and stated, "Date Of This Notice 06/06/94 Balance Due By 06/16/94." The notices also stated, "Federal Tax Liability Appears Incorrect Rhode Island Tax Computed Incorrectly" and indicated the amount allegedly due, but they contained no other information. The petitioners argued that "[t]he notices issued by the division of taxation did not comply with the requirements of R.I .Gen.Laws § 44–30–81," "fail[ed] to accord with the requirements of due process," and therefore no lawful assessment resulted. The District Court judge ruled that "because Mr. and Mrs. DeBlois were afforded a full and fair hearing by the Tax Administrator and later by this court, the court finds any defect in the tax notice to them to be *de minimus* and not so violative of their due process rights to cause this court to void the assessment of the State of Rhode Island."

█ In assessing taxes, the tax assessor must comply with the directives of state law, and assessments that are made outside the ambit of state law are illegal. *Inn Group Associates v. Booth,* 593 A.2d 49, 51 (R.I.1991). As this court wrote in *Cabana v. Littler,* 612 A.2d 678, 684 (R.I. 1992), the power to tax

"is not absolute * * * and authority to tax is granted only by unequivocal instructions found in the Rhode Island

Constitution and statutes enacted by the Rhode Island legislature. Rhode Island courts must assiduously protect the people from abuse of the government's taxing authority by requiring strict adherence to these unequivocal instructions, and expeditious measures not in conformance with these limitations, no matter how well intentioned, cannot be substituted for compliance."

█ Here, the notices failed to adhere to the statutory instructions of G.L.1956 chapter 30 of title 44. Section 44–30–81(b) states that "[a]fter thirty (30) days from the mailing of a notice of deficiency, the notice shall be an assessment and a notice and demand for tax to be paid at the place and time specified in the notice." Thus, a notice of deficiency becomes an assessment thirty days after its mailing, and the tax administrator is precluded from assessing a deficiency earlier than thirty days from the date of the mailing of a notice of deficiency. Here, the date of the notices sent to petitioners was June 6, 1994, demanding that the "balance due" be paid by June 16, 1994, ten days from the date of the notice. If the notices were "notices of deficiencies," the tax would be due thirty days later on July 6, 1994, not on June 16, 1994, as the notices directed.

The notices were also invalid because they were vague and actually misleading with respect to the reason for the deficiency. *See Taylor v. Narragansett Pier Co.,* 19 R.I. 123, 123, 33 A. 519, 519 (1895) (per curiam) ("The assessment must also be held to be invalid because it is so vague and uncertain that it does not identify the lands assessed. The owner could not know from it what lands were assessed, nor whether the lands of other persons might not be included in it."). Based on the notices, which stated "Federal Tax Liability Appears Incorrect Rhode Island Tax Computed Incorrectly," petitioners could have reasonably believed that the cause of the deficiency was an error in the calculation of their federal income tax from which Rhode Island income tax is comput-

ed. Thus, they could not reasonably have known that the tax division was challenging their residency. Although the legislative amendment of § 44–30–81 in 1998 requiring notices of deficiencies to contain an explanation of the reasons for the deficiency postdated this case, we believe that the notices at issue here were misleading and imprecise and that our case law, *see ante*, has held that notices must be clear and specific.

In addition § 44–30–81(c) states that "[n]o assessment of a deficiency and no levy or proceeding in court for its collection shall be made, begun, or prosecuted * * * until a notice of deficiency has been mailed to the taxpayer." Because valid notices of deficiencies were not sent to petitioners for the tax years 1991–1993, there could be no lawful assessment of deficiency or proceeding in court in those tax years.[14]

Therefore, the notices in this case were invalid because (1) they violated the statutory instructions in chapter 30 of title 44, by making a demand for payment, essentially assessing the tax ten days from the date of the notice, and (2) the notices were vague and misleading. Because the notices were invalid, the assessments of deficiencies on the basis of domicile for tax years 1991–1993 were unlawful.

Because we decide the case on statutory grounds, we need not address petitioners' procedural due process claim.

In conclusion, therefore, we hold that the District Court judge erred in finding that under G.L.1956 § 8–8–28 domicile must be established by clear and convincing evidence. The petitioners have proven that they have established their domicile in Florida by a preponderance of the evidence presented. The notice of tax deficiencies sent to the petitioners for the tax years 1991, 1992, and 1993 were defective in not complying with statutory requirements.

Consequently, we grant the petition for certiorari. The judgment of the District Court is quashed, and we direct the District Court to enter judgment for the petitioners on the issues of domicile and the deficiency of the tax notices. The papers in this case are remanded to the District Court with our decision duly endorsed thereon.

14. General Laws 1956 § 44–30–81(d) states, "The taxpayer may at any time, whether or not a notice of deficiency has been issued, by a signed notice in writing filed with the tax administrator waive in whole or in part the restrictions on deficiency assessments and collection." It appears from the record that no signed waiver in writing was filed with the tax administrator in this case.